STATE of Missouri, Respondent,

v.

Earl Mack MALONE, Appellant.

No. 50246.

Supreme Court of Missouri,

Division No. 1.

Oct. 12, 1964.

Thomas F. Eagleton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., Jefferson City, for respondent.

Taken as submitted by appellant.

HOUSER, Commissioner.

Earl Mack Malone was convicted of murder in the second degree and sentenced to 20 years' imprisonment in the penitentiary. Defendant's court-appointed attorney overlooked filing a motion for new trial within 10 days, as required by Supreme Court Rule No. 27.20(a). The trial judge thereafter suggested to the attorney that the motion could be filed out of time and made an order extending the time. This order, the validity of which is not challenged, was entered 27 days after the verdict was returned. A motion for new trial, filed on the last day of the extension period, was overruled after a hearing. Defendant's attorney did not file a notice of appeal. Defendant, acting pro se, sought and obtained a special order under Supreme Court Rule No. 28.07 allowing the filing of a notice of appeal out of time, alleging that he requested his attorney to file a notice of appeal but that his attorney ignored his request.

Appellant having filed no brief in this court it is our duty to review all assignments of error properly preserved in the motion for new trial. There were five assignments of error, all directed at the verdict. It was alleged that the verdict "is against the evidence"; "is against the greater weight of the credible evidence in the case"; "is against the law under the evidence"; "is excessive," and "is so excessive as to show bias and prejudice on the part of the jury." These assignments of error are insufficient and fail to preserve anything for appellate review because they are too general. State v. Herron, Mo.Sup., 349 S.W.2d 936; State v. Russell, Mo.Sup., 324 S.W.2d 727; State v. Daegele, Mo.Sup., 302 S.W.2d 20; State v. Thompson, Mo. Sup., 299 S.W.2d 468; State v. Jacobs,

Mo.Sup., 321 S.W.2d 450; State v. Hood, Mo.Sup., 313 S.W.2d 661; State v. Jackson, Mo.Sup., 371 S.W.2d 309; State v. Gray, Mo.Sup., 360 S.W.2d 642; and State v. Velanti, Mo.Sup., 331 S.W.2d 542.

Our duty in this situation is to examine those matters in the record for which no assignment of error is required. Supreme Court Rule No. 28.02, V.A.M.R.

As originally filed the information charged murder in the first degree, under § 559.010, V.A.M.S. A charge of murder in the first degree includes the lesser offense of murder in the second degree. Prior to trial the prosecuting attorney reduced the charge to murder in the second degree. § 559.020, V.A.M.S. As thus reduced, the information is sufficient in form and substance to properly charge and to sustain a conviction of the crime of murder in the second degree. State v. Haynes, Mo.Sup., 329 S.W.2d 640

The verdict of the jury, as corrected by the trial judge in the presence of the jury (by changing the word "by" to "at," so as to read: "We, the Jury, find the defendant, Earl Mack Malone, guilty of Murder in the Second Degree, and assess his punishment at 20 years in the State Penitentiary."), was sufficient in form and substance. State v. Reagan, Mo.Sup., 108 S.W.2d 391, 395 [3]. It clearly found defendant guilty of the crime of murder in the second degree, and therefore was responsive to the reduced charge. The inadvertent use of the word "by" instead of "at" was an irregularity in form which was not material or fatal, State v. Sanders, Mo. Sup., 313 S.W.2d 658, 660 [5, 6], and did not affect its validity. (See State v. Steptoe, 1 Mo.App. 19, where the verdict handed in by the jury assessed the punishment "for ten years penitentiary." The verdict certified in the transcript assessed the punishment "at ten years in the state penitentiary." The appellate court presumed that the verdict was shaped in proper form by the direction of the court, with the jury's consent.) Here the trial court properly amended the verdict in the presence of and with the consent of the jury by correcting this grammatical irregularity, which was a mere matter of form. State v. De Witt, 186 Mo. 61, 71, 84 S.W. 956, 959. It was the duty of the court to do so. State v. Thost, Mo.Sup., 328 S.W.2d 36. The failure of the verdict to recite that the jury found the defendant guilty "as charged in the information" did not invalidate the verdict. State v. Saussele, Mo.Sup., en banc, 265 S.W.2d 290, 294; State v. Feeney, Mo.Sup., 226 S.W.2d 688; State v. Wright, 342 Mo. 58, 112 S.W.2d 571. The omission of the word "imprisonment" is immaterial. State v. McIntosh, Mo.Sup., 333 S.W.2d 51. The punishment assessed by the jury and imposed by the court, 20 years (imprisonment) in the penitentiary, is within the limits prescribed by law for murder in the second degree. § 559.030, V.A.M.S.

Defendant was arraigned and pled not guilty. The court appointed an attorney to represent defendant. The record shows that the attorney was present throughout the trial, at the presentation of the motion for new trial, and at the time sentence was passed. Defendant was granted allocution. The judgment rendered was responsive to the issues and the verdict.

Although the foregoing examination discharges our duty on this appeal we have read and examined the entire transcript pursuant to our discretionary authority under Supreme Court Rule No. 27.20(c), to determine whether during this trial there occurred any plain errors affecting the substantial rights of defendant which, although not raised in the trial court or preserved for review, have resulted in a manifest injustice or miscarriage of justice. We exercise this power sua sponte in this case because of the general tenor of the post-trial proceedings, in which defendant's court-appointed attorney failed to file a motion for new trial within the time prescribed by law, failed to raise a single reviewable point

in the motion for new trial tardily filed, and ignored his client's request to file a notice of appeal. State v. Goodwin, Mo.Sup., 352 S.W.2d 614, 619 [1].

We will first consider the sufficiency of the evidence to support the verdict. There was evidence from which the jury could have found these facts: Defendant had been "going with" one Annie for four years. Annie had been living with defendant in an apartment as his common-law wife until approximately seven months before the shooting. Annie had a child by defendant. They were not married. On the day in question Annie, in company with her mother and her cousin Dorothy, went to Anthony's Grill and Bar on east 18th Street in Kansas City. Annie was searching for defendant. Outside the bar they encountered Earl Lockett, a person known to Annie's mother but not to Annie. Lockett spoke to Annie and her mother and invited them in the bar for a drink. The three women entered, sat at a table, and beer was ordered. Seated at the table were the three women, Lockett, and another man who was never identified. After the beer was "poured" and at a time while they were laughing, defendant entered the bar. Defendant and Lockett were not acquainted with each other. Defendant went to the back of the establishment, got a beer, and then went to the table where Annie was seated, asked her how she felt, and if she was doing all right. After she had answered him the defendant told Annie in a low voice that he would give her three minutes to get out of the place. Defendant turned and went to the bar and started to drink his beer. Annie told her mother what defendant had said, and her mother told Lockett. Lockett asked who defendant was and said either "Who is he talkin' to?" or "Who is he, talkin' to me like that?" Annie's mother told Lockett that defendant was not talking to him, and to sit down. She held onto his hand. Lockett got up, walked around the table to the chair where Annie was sitting, and asked defendant if he was talking to him. While Lockett was standing there, some 12 feet from defendant, defendant "whirled around right quick and got his gun out of his pocket" and fired a shot. There were no threats or other conversation preceding the firing of the gun. Lockett had no gun or other weapon in his hand. There was evidence that Lockett was not seen with his hands in his pockets. The shot did not strike Lockett, but hit the window. Lockett's arms were raised; he "held up his hand like he was asking a question or something," begged defendant not to shoot him, and asked defendant "Why would you shoot me? I haven't did anything. I don't even know these people." After the shot was fired an employee at the tavern ran to defendant, struggled with defendant for possession of the gun, and begged him not to shoot any more. Defendant struggled loose from the employee's grasp and fired three more shots. One of the three subsequent shots, probably the second of the three additional shots, struck Lockett in the left chest. Lockett staggered out of the tavern, fell, and died from the bullet wound. Defendant was subdued and disarmed. Right after the shooting defendant said to Annie: "I'm going to kill you, too." When asked why he shot Lockett defendant told one officer that he "was mad." He told another officer that "this man was coming * * * on me with his hands in his pockets and I thought he had something, so I shot him." The foregoing constitutes substantial evidence to support the verdict.

Defendant took the stand, admitted the shooting, but claimed that he shot in self-defense. He testified that he talked to Annie at the table, urged her to "come on and go home"; that Lockett asked him "what did I want at this table"; that Lockett made the threat that defendant "wasn't going to get anyone from the table"; that defendant told Lockett he was not talking to him, whereupon Lockett got up from the table with his hand in his pocket and that defendant backed away from him; that Lockett walked toward defendant, advanc-

ing upon him; that defendant told Lockett to "get back I wasn't talking to him," but Lockett kept coming towards defendant; that eventually defendant fired one shot at Lockett's feet and another to his side to stop him but that Lockett kept advancing; that defendant did not know what Lockett was going to do to him and that when Lockett started to take his hands out of his pockets, defendant shot in self-defense, while still backing toward the rear of the bar. Three of the state's witnesses testified to facts which, if believed, would have corroborated the theory of self-defense: that Lockett walked toward defendant, who backed away and warned Lockett "Get back off of me," and that Lockett did not stop but continued advancing and was walking forward and toward defendant when he was shot. The verdict of the jury, however, is conclusive under evidence tending to sustain opposing theories, State v. Sharp, 183 Mo. 715, 82 S.W. 134, where no error in the instructions or the rulings on the evidence is shown. State v. McMullin, 170 Mo. 608, 71 S.W. 221. In such case the verdict will not be set aside as without evidence to support it. State v. McKenzie, 177 Mo. 699, 76 S.W. 1015. Instructions were given on murder in the second degree, manslaughter, self-defense, presumption of innocence, reasonable doubt, intent and credibility of the witnesses. The instructions, reviewed, reveal no errors prejudicial to defendant. Nor do the rulings on the admission and exclusion of evidence disclose any errors prejudicial to defendant.

There is no ground for interference with the judgment of the circuit court and the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.