STATE of Missouri, Respondent,

v.

Michael Alvin THOMPSON, Appellant.

No. 47624.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 2, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 1985.

Application to Transfer Denied
June 25, 1985.

Mark A. Richardson, Asst. Atty. Gen., Jefferson City, for respondent.

Dave Hemingway, St. Louis, for appellant.

SIMON, Presiding Judge.

Michael Alvin Thompson (Thompson) appeals from his conviction for one count of forgery (Section 570.090.1(4) RSMo 1978), following a jury trial in the Circuit Court of the City of St. Louis. Thompson was sentenced as a persistent offender to a term of thirteen years.

On appeal, Thompson contends the trial court erred: (1) in refusing to grant his request for a mistrial based on a witness's testimony of previous bad acts by Thompson which were not within a hearsay exception; (2) in giving identical verdict directors for Counts I and II, and failing to differentiate between the two forgeries, thus violating his Fifth Amendment guarantee against double jeopardy; and (3) in denying his motion for new trial or acquittal as to Count II based on the same error set forth in Thompson's second point. We affirm.

As the sufficiency of the evidence is not challenged in this case, we shall set forth only those facts necessary to the disposition of this appeal.

On September 13, 1982, Thompson approached Carol Lovins (Lovins) in order to solicit her help in cashing some forged checks. Thompson claimed he wanted the money to send to Michele Perry (Perry), an employee of Lovins who was in the city workhouse. Thompson approached Lovins at the Methadone Clinic (Clinic) where Lovins was waiting to obtain Methadone for Perry. Lovins testified that Thompson wanted her help in cashing some forged checks and if she refused, he threatened to blow up her beauty shops or beat her up the way he had Perry. Lovins testified that as a result of a beating inflicted by Thompson, Perry had sustained a broken collarbone and three broken teeth. The beating occurred during Thompson's attempt to induce Perry to steal customers' account numbers from Lovins' cash register and write some checks on them. A few weeks earlier when Lovins questioned Thompson about taking the account numbers, he struck her head with his hand.

Lovins agreed to help Thompson with the intention of ensuring his arrest. Thompson showed Lovins about twenty payroll checks, then he went to the back of the Clinic and typed names on two of the checks. He then had the checks, "check protected" (a method of embossing the written amount onto the face of the check) at a nearby pawnshop. During this interval Lovins called Officer Walsh, with whom she had previously worked as an informer, and related Thompson's plans. Officer Walsh encouraged Lovins to go along with Thompson's forgery scheme and she agreed to contact Walsh later to tell him where the checks were to be cashed. After making the call, Lovins met Thompson and another man, Jerome Clark (Clark), who also agreed to take part in the scheme.

The trio entered Clark's car and proceeded to Eagle Bank and Trust. On the way Lovins observed Thompson forge a signature on one of the checks with a blue felt tip pen. He endorsed the check as "Mildred Bell," placed account number "5128880" on the back of the check and designated the same name as payee. After they drove through the bank to "check it out," Clark and Thompson got out leaving Lovins to drive to the bank alone. Lovins

cashed a check for $200.00 at the drive up window and then met Thompson and Clark across the street. The bank teller testified that Lovins was at the bank around 1:30 to 2:00 P.M.

Having received the cash, Thompson and Clark decided to drive several blocks north to purchase some drugs. On the way back to the bank Lovins informed Thompson she needed to call her sister, but instead phoned the police. She talked to Detective Shrum, informing him that Thompson wanted her to cash another check. After calling Officer Walsh, Detective Shrum and Detective McEntee drove to the Clark Station where Lovins had placed the last phone call. Detectives Stewart and Helbing arrived in another car. Upon their arrival, the officers noticed Clark's car, a black Lincoln, at the Clark Station. Officer Stewart testified he observed Thompson hand Lovins another check. Lovins then left in the car to cash the check, while Clark and Thompson remained at the gas station. On her way to the bank, Lovins stopped at a lot nearby where she showed the check to Officers Shrum and Stewart. Lovins parked at a lot directly across from the bank and went up to the walk-up window. The bank teller testified Lovins cashed a check at her window between 4:00 and 5:00 P.M.

While Lovins was in the bank, Thompson and Clark walked from the gas station to Clark's parked car. Thompson carried a brown paper bag which had the top of a magazine sticking out of it. After cashing the second check for $200.00, Lovins returned to the car and entered the front passenger seat while Thompson entered the back seat and Clark drove out of the lot. The policemen followed the car a short distance before pulling them over. One of the officers noticed Thompson trying to conceal the magazine in the cushion on the back of the front seat. After the trio were handcuffed, an officer searched the car and pulled the magazine out revealing an envelope which contained nine checks which appeared to be forged. The checks issued from C.M. Brown and Associates, Inc. and Officer McEntee testified that check No.

275 bore the name Mildred Bell, the same endorsement on the checks cashed at Eagle Bank.

At trial, Thompson neither testified nor introduced evidence. Mildred Bell testified she had never signed the two checks nor had she ever received a check from Charles M. Brown, the payor on the checks. Bell remembered her mailbox had been broken into and some bills were taken. Charles M. Brown testified he had closed a checking account in February 1980 after he noticed some checks were missing and that neither he, nor anyone under his authority, had written checks to Mildred Bell. Brown identified the two cashed checks and six others found in the magazine as those missing since February.

The jury acquitted Thompson on Count I (forgery), but convicted him on Counts II (forgery) and III (receiving stolen property). Thompson moved for a new trial or judgment of acquittal on Counts II and III based on the following: As to Count II (forgery), he contended Count II verdict director was identical to the Count I verdict director on which he was acquitted and, as a result, he was not clearly apprised of which forgery he was found guilty. As to Count III (receiving stolen property over $150), Thompson contended the instruction confused the jury because it was not a MAI–CR instruction and was not applicable to the facts since there was some dispute as to the value of the uncashed checks. The trial court sustained Thompson's motion as to Count III and entered a judgment of acquittal. Thompson's motion as to Count II was denied and he was sentenced as a persistent offender to a term of thirteen years. It is from this judgment that Thompson appeals.

■ Thompson's first point is that the trial court erred in failing to grant a mistrial when Lovins testified that Thompson threatened to beat her and described Perry's injuries which resulted from a prior beating inflicted by Thompson. He maintains the testimony does not fall within the recognized exceptions to the proscriptions

against allowing evidence of crimes distinct from that charged. Additionally, Thompson maintains the prosecutor's reference in closing argument to Thompson's beating women was prejudicial error.

The record reveals Lovins testified Thompson had threatened to beat her or blow up her beauty shop if she refused to help him in cashing some forged checks. Immediately following this statement the prosecutor asked the following:

QUESTION (PROSECUTOR): At that time were you afraid of Michael Thompson?

ANSWER (LOVINS): Not in the least, because he had done me harm already.

Q. What had he done to you?

A. He had took my operator, Michele Perry, had broke three of her teeth out, broke her collarbone and made her go in and take seventeen account numbers out of my cash register drawer and run them.

Q. What did he do to you?

(DEFENSE): Judge, I'm going to object. I move for a mistrial on the grounds that this is an attempt to go into possible alleged other crimes.

(PROSECUTOR): Your honor, it's not to show the truth of the matter, but the state of mind of this victim—I mean this witness at this time.

THE COURT: The jury's instructed that the testimony of the witness just before the motion was made is not admitted for the truth of the matter, and the motion will be overruled. Jury is not to consider that matter in determination of the guilt or innocence of the defendant.

Evidence of other crimes is competent to prove the specific crime charged when it tends to establish: (1) motive; (2) intent; (3) absence of mistake; (4) a common scheme; or (5) identity. *State v. Burr*, 542 S.W.2d 527, 530[1] (Mo.App.1976).

■ The test of whether the evidence of other distinct crimes falls within one of these exceptions is whether it is logically relevant to the particular excepted purpose for which it is being introduced. "If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime." *Burr* at 530[2].

■ A material issue in the present case was whether the state's evidence showed Thompson acted through or "encouraged" Lovins to cash the checks as evinced by the verdict directors for Counts I and II which in relevant part provided:

"A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if for the purpose of committing that offense, he aids and encourages another person in committing it." (Patterned after MAI–CR 2d 2.12.)

Clearly, when Lovins was questioned about her fear of Thompson her unsolicited response which included a description of the injuries Thompson had previously inflicted on her employee (Perry) and future threats of harm by Thompson against her, did reasonably tend to prove Thompson's criminal intent and explained Lovins' conduct and reason for cooperating with him. In sum, the testimony went to prove Thompson aided and encouraged, by the threats of physical harm, Lovins' participation in the offenses charged. In light of the foregoing, we find that Thompson was not prejudiced by the trial court's failure to grant a mistrial and there was no abuse of discretion.

■ As to Thompson's argument that the prosecutor's remarks in closing argument were so prejudicial as to require reversal, we disagree. The pertinent portion of the transcript provides the prosecutor stated:

"What this evidence indicates, ladies and gentlemen, that Michael Thompson has committed on September 13, 1982, two of the most cowardly type of crimes a person can do. He beats women, that is the reason Carol Lovins cashed that check."

Initially, we note the trial court has broad discretion in determining the propriety of oral argument. As long as the prosecutor stays within the reasonable inferences therefrom, the argument is legitimate. *State v. Overkamp*, 646 S.W.2d 733, 737[14] (Mo.1983).

■ In determining whether a trial court has abused its discretion with regard to the prejudicial effect of the prosecutor's remarks in closing argument, the remarks must be considered in the context of the court's instructions, and the argument as a whole. *State v. Heinz*, 607 S.W.2d 873, 878[10, 11] (Mo.App.1980).

When viewed in this manner we fail to find any prejudicial results. Contrary to Thompson's argument that the purpose of the remark was to inflame the jury against him by depicting him as a woman beater, we find the prosecutor's remarks were referring to Thompson's intimidation of Lovins and her knowledge of what he was capable of doing to carry out his threats which caused her cooperation in the cashing of the checks. Lovins' intent in participating in the forgeries is a material issue and is supported by the record.

■ Improper argument will only justify a reversal on appeal if the defendant demonstrates its effect is decisive on the jury's determination. *State v. Wren*, 643 S.W.2d 800, 802[3, 4] (Mo.1983). Thompson has failed to do so in this case, consequently, his first point fails.

■ Thompson's second point on appeal is that he was prejudiced by the trial court's failure to differentiate between the identical verdict directors for Count I (forgery) and Count II (forgery). These instructions, Thompson contends, confused the jury and prevented him from being certain of what count he was acquitted and what count he was convicted. He maintains that the identical verdict directors (based on MAI–CR 2d 24.20.4) submitted failed to conform to the applicable Notes on Use attending MAI–CR 2d 24.20.4 which cross reference and incorporate the Notes on Use under MAI–CR 2d 17.00. Note 6

under MAI–CR 2d 17.00 authorizes the description of the time and place of the offense when they become of decisive importance. The time or place may become of decisive importance under certain circumstances such as when there is an issue concerning an alibi, venue, statute of limitations or when the defendant may have committed several separate offenses against the same victim over a short space of time. MAI–CR 2d 17.00 Note 6. Clearly the thrust of the Note 6 under MAI–CR 2d 17.00 is that the trial court has the discretion to determine whether to include the time and place of an offense. The suggested circumstances enumerated above are those in which the absence of a reference to a specific time or place is likely to be prejudicial to the defendant.

Although the better practice would have been to use the time identification, we do not find Thompson was prejudiced under the circumstances present in this case. The state's evidence presented the two forgery incidents in a chronological order with significant factual differences surrounding each incident. Lovins testified that around one o'clock she met Thompson at the Clinic, then proceeded to cash the first check at the bank's drive-thru window. The bank teller corroborated Lovins' testimony and verified that the time was about 1:30 to 2:00 P.M. Lovins then went with Thompson and Clark to obtain drugs before cashing the second check with four police officers observing the second check cashing incident. Another bank teller, which cashed the second check, testified that Lovins was at the bank's walk-up window between 4:00 and 5:00 P.M.

Thompson did not testify or present any evidence and the record does not contain his opening or closing arguments. However, the record does contain the state's closing argument with reference to Mildred Bell's testimony by the prosecutor in which he said: "She said this isn't my signature on this check and the check in Count II." This remark buttresses the conclusion that the evidence, as a whole, presented and referred to the checks cashed in a sequen-

tially consistent manner. We note also that MAI–CR 2d 2.70, which is required in every case whether requested or not, informed the jury that each offense and the evidence and law applicable to it should be considered separately. Any evidence offered for one offense or purpose should not be considered for another offense or any other purpose.

Thompson argues that the jury was given a roving commission to find him guilty of forgery based on check cashing incidents or his possession of the stolen checks found on him at the time of his arrest. The argument fails for two reasons. First, as previously discussed, the evidence was systematically presented to the jury and argued consistent with the instructions. The verdict directors (Instructions # 5 and # 6), MAI–CR 2d 24.20.4 (modified by 2.12), provided as follows:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if for the purpose of committing that offense, he aids and encourages another person in committing it.

As to
(Count II) .
Count I,

if you find and believe from the evidence beyond a reasonable doubt:

First, that on September 13, 1982, in the City of St. Louis, State of Missouri, Carol Lovins acting at the encouragement of the defendant used as genuine a check in the amount of $200.00 made payable to Mildred Bell drawn upon the account of C.M. Brown and Associates, and

Second, that the defendant and Carol Lovins knew that this writing had been made so that it purported to have a genuineness which it did not possess, and

Third, that the defendant so acted with the purpose to defraud

Then you are instructed that the offense of forgery has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of forgery, the defendant aided and encouraged Carol Lovins in committing that offense,

then you will find the defendant guilty under
(Count II)
Count I,

of forgery.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

The verdict directors are identical, except for the reference to Count I and Count II and refer to the checks Lovins cashed. Instruction # 7 (Count III) addressed specifically the six uncashed checks Thompson possessed and did not mention Lovins or the checks she cashed. Clearly, the jury was not misled or confused by these instructions in light of the evidence.

*State v. Woodfin*, 559 S.W.2d 273 (Mo. App.1977), involved a similar instructional problem. In *Woodfin*, the defendant was charged in Count I with selling marijuana to a Officer Brindell, and charged in Count II with selling marijuana to a Officer Schneider. The verdict directors for the two counts appeared identical, except for the reference to Count I or Count II and did not expressly differentiate between the sales to the two officers. The defendant testified that although the sales occurred someone else was the vendor. The court held it was not unreasonable to assume the jury understood each instruction referred to one of the two sales established by the evidence, therefore, no manifest injustice resulted.

The issue in *Woodfin* was not preserved, but was reviewed under the plain error doctrine. Here, Thompson preserved the point for review. However, the *Woodfin* rationale is informative. Viewing the evidence and instructions as a whole, along the sequential order in which they were submitted, it was not unreasonable for the

jury to acquit Thompson of the first check cashed in Count I and convict him of the second check cashed in Count II which was supported by the testimony of four police officers at the scene. Accordingly, his second point is without merit.

Thompson's third point concerned the application of double jeopardy should we reverse and remand, but our resolution of Points I and II disposes of this point.

Judgment affirmed.

STEWART, Senior J., and STEPHAN, J., concur.