**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Thomas HENDERSON,
Defendant–Appellant.**

**No. 52446.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 19, 1988.

Donald L. Wolff, Jacquelyn A.J. Rubemeyer, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Defendant, Thomas Henderson, was convicted by a jury in the Circuit Court of the City of St. Louis of attempted kidnapping in violation of § 564.011 RSMo. He was sentenced as a persistent offender to fifteen years in the Missouri Department of Corrections. Defendant appeals; we affirm.

On September 1, 1985, at approximately 10:30 a.m., Vadia Travis was walking north on Tucker Boulevard. Ms. Travis stepped onto the viaduct, near Chouteau, on the east side of the street when a blue Cadillac approached from the south and pulled up parallel to her. The driver offered Ms. Travis a ride which she refused. The conversation continued for approximately "two to three minutes" while Ms. Travis continued walking north, the car keeping pace with her.

The driver then demanded that Ms. Travis' get into the car. As he made the demand he tapped a gun against the car's windshield.

Ms. Travis decided to escape by running south on the east side of the Tucker Boulevard viaduct. The driver made a U-turn on Tucker in order to pursue her. Seeing this, Ms. Travis jumped off the viaduct and fell approximately ten to fifteen feet, injuring herself in the process.

Vincent Jones, a security guard at the Continental Bakery Company on Gratiot (just below the Tucker Boulevard viaduct), was on duty at the time. He noticed a woman running on the bridge, suddenly stop, then jump over the side. As Mr. Jones was assisting the woman, the blue Cadillac pulled into the parking lot. Mr. Jones spoke with the driver who accused Ms. Travis of stealing his wallet. Mr. Jones suggested that the driver wait for the police to arrive, but he drove off after a few seconds.

At approximately 10:45 a.m. that same morning Kathy Greve was driving north on Tucker Boulevard when she saw a woman, she later identified as Ms. Travis, running south. She also observed a blue Cadillac driving parallel to Ms. Travis which ap-

peared to be causing her distress. As Ms. Greve drove past the blue Cadillac, she was able to get a "fleeting look" at the driver's profile. Ms. Greve looked back through her rearview mirror and saw Ms. Travis jump over the viaduct. She stopped her car and ran to the spot from which Ms. Travis jumped. Ms. Greve saw Ms. Travis was being attended to. She then saw the blue Cadillac head toward the parking lot where Ms. Travis landed. As the car passed her, Ms. Greve was able to see the other side of the driver's profile and the back of his head. A few moments later the blue Cadillac passed her again heading north on Tucker. Ms. Greve wrote down the license plate number, drove home and contacted the police.

Later that day, Detectives Trevor and Simon went to Charter Regional Hospital where Ms. Travis had been taken. The detectives had checked the license plate number supplied by Ms. Greve and discovered it was registered to the defendant. They brought along some photographs for Ms. Travis to look at. Defendant's photograph was on top of the stack and Ms. Travis identified it without looking at any of the others. After she identified the photo, one of the detectives made the statement that this was the photograph of the man who owned the blue Cadillac.

Ten days later, September 11, 1985, Detectives Trevor and Campbell arrested defendant while he was operating the Cadillac in an alley behind his home. At that time they discovered that defendant needed the assistance of crutches because he is missing part of one leg.

Later that same day, Ms. Travis and Ms. Greve attended a line-up at the St. Louis Police Department. Ms. Greve was hesitant to make an identification before going in but did go through and make a positive identification. During the line-up, all the men were seated so as not to draw attention to defendant's missing leg. Both women identified defendant as the driver of the blue Cadillac.

At trial defendant presented evidence that various black males besides defendant drove the Cadillac, often without permis-sion. There was also conflicting testimony concerning defendant's hairstyle. The witnesses to the incident described the driver as having a medium afro. Several of defendant's witnesses testified that defendant's hair was chemically relaxed, making it straight in September 1985.

Defendant raises four points on appeal: 1) The trial court erred in not suppressing the identifications because the circumstances surrounding them were unduly suggestive and violated due process; 2) the trial court should have granted defendant's motion for judgment of acquittal at the close of the evidence because the evidence was insufficient to support the verdict; 3) the trial court erred in denying defendant's motion for mistrial in that the prosecutor made an improper closing argument which denied defendant his right to a fair trial; and, 4) the trial court should have granted defendant's motion for judgment of acquittal because the verdict form was filled out improperly by the jury.

Defendant's first point is a question that the United States Supreme Court has examined in great detail. The test outlined in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967) and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), was adopted by Missouri in *State v. Higgins*, 592 S.W.2d 151, 159–160 (Mo. banc 1979). In order to determine whether due process has been violated, we employ a two-step analysis. *Ibid.* at 159. First, the identification procedures are examined to determine if they are impermissibly suggestive. Second, if they were impermissibly suggestive, we determine if the identification is otherwise reliable. Reliability is examined by the totality of the circumstances. Factors to consider are: the opportunity of the witness to see the criminal at the time of the crime; the witness' degree of attention; the accuracy of the description; the level of certainty; and, the length of time passed between the crime and the identification. *Ibid.* at 160. Against these factors we weigh the effect of a tainted identification. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977).

■ Viewing the totality of the circumstances here, we cannot find that Ms. Travis' and Ms. Greve's in-court identifications were unduly tainted by the pre-trial identifications. Ms. Travis was able to observe the defendant from a short distance for two to three minutes on the viaduct, and then again for a few seconds on the Continental Bakery Company parking lot. Ms. Greve, on the other hand, only got fleeting profile looks, but her attention was peaked because of the situation.

Defendant claims that the descriptions given by the witnesses were inaccurate and, therefore, unreliable. We cannot say that the descriptions were greatly inaccurate. There were only minor discrepancies between the descriptions and the defendant's appearance. This goes to weight and credibility and is a question for the jury to decide. *State v. Stamps,* 569 S.W.2d 762, 766 (Mo.App.1978). Both Ms. Travis and Ms. Greve were able to pick defendant out of the line-up and again at trial. Most importantly, they were both very certain about their identifications, which is a key factor in determining the reliability of such evidence. *State v. Trimble,* 654 S.W.2d 245, 255 (Mo.App.1983).

■ We also find that while the photograph identification procedure was not performed with the utmost care, it was not inherently unreliable. In general, the practice of displaying a single photograph to a witness is viewed with some suspicion. *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155. In this case, however, Ms. Travis was shown defendant's photograph first only because it was on top of a stack of photographs. There was no prompting or coercion from the detectives to get her to choose that photograph. The statement, made by one of the detectives, that it was a picture of the owner of the blue Cadillac was made after the identification and, therefore, did not suggest it.

We hold that, under the two-part test, the identifications were reliable. Both witnesses had time and opportunity to observe the defendant, both were very sure of their identifications, and there was only a ten day interval between the crime and the line-up. If their testimony was not then credible it was a matter for the jury to decide. *State v. Green,* 635 S.W.2d 42, 46 (Mo.App.1982). Point I is denied.

A large part of the second point on appeal is based on defendant's assertion that the witness' identifications were tainted. Defendant claims that because the identifications were unreliable, the evidence was insufficient to support the verdict. We have already decided that the identification testimony was reliable. Thus, no further discussion of that issue is necessary.

The test that we follow in determining if the evidence is sufficient is whether the evidence is strong enough to make a submissible case from which a jury could reasonably find the defendant guilty. *State v. Wilson,* 645 S.W.2d 372, 373–374 (Mo.1983). We may consider the evidence in the light most favorable to the State and accept as true all reasonable inferences that support the verdict. *State v. Wade,* 711 S.W.2d 523, 524 (Mo.App.1986); ·*State v. Swingler,* 632 S.W.2d 267, 269 (Mo.App.1982); *State v. Puckett,* 611 S.W.2d 242, 244 (Mo.App. 1980).

■ Under these guidelines it is apparent that the evidence here is sufficient to support the verdict. The fact that the car was registered to defendant and two witnesses identified him as the driver of the vehicle at the time of the incident is enough. The trial court did not err in denying the motion for acquittal. Point II is denied.

Defendant's next point is that there should have been a mistrial because the prosecutor made improper remarks on three different occasions during his closing argument. The relevant portions of the argument are as follows:

### I.

Mr. Charles: And really, Ladies and Gentlemen, its just like he pushed her over that viaduct. He may as well push her. (sic)

## II.

Mr. Charles: Vadia Travis has every reason to remember the guy that pushed her off that viaduct, pointed a gun at her and just about pushed her off.

## III.

Mr. Charles: The evidence is clear on September 1st, that Sunday morning. It is clear he's pushed her over the viaduct, Ladies and Gentleman.

Ms. Black: Objection, there is no evidence he pushed her over the viaduct.

Court: Sustained.

Ms. Black: Ask the jury to disregard it.

Court: The jury is instructed to disregard the comment that he pushed her over the viaduct.

Mr. Charles: Figuratively speaking, Ladies and Gentlemen. I don't mean he literally pushed, but his hands were in her back when she went over.

Ms. Black: Object, ask that the jury disregard.

Court: As long as it is understood it's a figurative comment, and not literal, I'll overrule the objection.

Defendant claims that all references to Ms. Travis being pushed off the viaduct were improper and, therefore, denied defendant his right to a fair trial.

A prosecutor has the right to make any reasonable inferences from the evidence. *State v. Armbruster,* 641 S.W.2d 763, 766 (Mo.1982). The trial court is given broad discretion to determine whether the inferences are permissible. *State v. Thompson,* 691 S.W.2d 322, 326 (Mo.App.1985).

■ In this case the trial court did not abuse its discretion. The defense attorney made no objection until the third reference. The court, as well as the prosecutor, made it clear that the prosecutor was speaking figuratively, not literally. The inference was also proper. Clearly, Ms. Travis jumped off the viaduct to escape the peril into which defendant's actions had thrust her. The inference was entirely reasonable. Point III is denied.

■ In his final point, defendant argues that the trial court erred in denying his motion for judgment of acquittal because the jury filled out the verdict form incorrectly, thus rendering the verdict ambiguous. The verdict form as originally returned read "We, the jury, find the defendant, Thomas Henderson, guilty of an attempt to commit kidnapping as submitted in Instruction No. *7.*" Instruction number 7 was the definition of kidnapping contained in MAI–CR 33.01. Instruction number 5, patterned after MAI–CR 18.02, told the jury that if it found beyond a reasonable doubt that defendant pointed a gun at Vadia Travis, ordered her to get into his automobile, that such conduct was a substantial step toward the crime of kidnapping her, and was done for such purpose, then the jury should find defendant guilty of attempted kidnapping. While the number 5 rather than 7 should have been inserted in the verdict form, we perceive no prejudice whatsoever to defendant as a result of this error.

When the trial judge noted that the wrong number had been inserted, he summoned both counsel and the foreman of the jury to the bench. The foreman offered the following explanation:

I was going to put five down but they wanted to make it clear terrorizing and kidnapping taking place, and terrorizing was the effect of the kidnapping. So we'll change it to five. It will be my decision anyway. I wanted to go with five, but they wanted to reflect that they felt he was guilty to all of them and I let them go 'round and 'round and plenty of talk. I wanted to put five down and they wanted to reflect seven. They decided seven reflected more of what they were thinking. They didn't want any mistake made that they thought the kidnapping had taken place; and the terrorizing was the effect of what they wished to note. I'll change it to five if it makes it better for the Court. Then I'll just initial it today's date, the 12th.

The foreman then made the change. The verdict form, thus corrected, was read aloud and the jury polled. Each member of the jury affirmed that the verdict as cor-

rected was his verdict. Defendant voiced no objection to this procedure at the time. Mere irregularities in the form of a verdict which do not affect its substance may properly be corrected by the trial judge in the presence of the jury. *State v. Malone,* 382 S.W.2d 679, 681 (Mo.1964). Such was the nature of the change here, albeit made at the instance of the foreman with the unanimous approval of the jurors themselves.

The judgment of conviction is affirmed.

DOWD and PUDLOWSKI, JJ., concur.