**STATE of Missouri, Respondent,**

v.

**Jeffery K. JOHNSON, Appellant.**

**No. WD 58619.**

Missouri Court of Appeals,
Western District.

Aug. 28, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Oct. 30, 2001.

Application for Transfer Denied
Dec. 18, 2001.

---

John M. Schilmoeller, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

Before SMITH, P.J., and SMART and HOWARD, JJ.

EDWIN H. SMITH, Presiding Judge.

Jeffery K. Johnson appeals the judgment of his jury convictions in the Circuit Court of Jackson County, Missouri, of six counts of statutory sodomy in the second degree, § 566.064,[1] Counts I, II, III, V, VI and VIII; and one count of sexual misconduct in the first degree, § 566.090, Count IX. As a result of his convictions, the appellant was sentenced to seven years' imprisonment in the Missouri Department of Corrections on each count of sodomy and one year for sexual misconduct. The court ordered the sentences to be served as follows: Counts I and II concurrent; Counts III and V concurrent, but consecutive to Counts I and II; and Counts VI, VIII and IX concurrent, but consecutive to the other counts, for a total of twenty-one years of imprisonment.

In Point I, the appellant claims that the trial court erred in sustaining the State's objection to his trial counsel's *voir dire* question, "Is there anyone who thinks that an accused person should have to testify?," because it violated his due process right to a fair and impartial jury in that the question was proper in determining whether the jury would be biased and prejudiced against him for his failure to testify. In Point II, he claims that the trial court plainly erred in giving Instructions 10, 12, 14, 16, 18, 20 and 22, the State's verdict directors submitting statutory sodomy in the second degree, because they violated the appellant's "rights to a fair trial and an impartial jury and to due process of law." In Point III, he claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's evidence and at the close of all evidence because the evidence was insufficient to prove, beyond a reasonable doubt, each and every element as to one count of statutory sodomy in the second degree, as required by due process.

We affirm.

## Facts

During the summer of 1997, the appellant, who was forty-seven years old at the time, lived in Harvest Hills near Independence, Missouri, where he began spending time with three boys: T.C., 15; M.M., 14; and M.W., 14. They engaged in many activities together, including camping.

Sometime in October of 1997, the appellant went camping with the boys. While camping, the appellant, in separate incidents, fondled the penis of M.M. and M.W. He also placed his mouth on M.M.'s penis. Both boys asked the appellant to stop, with M.W. leaving the campsite to avoid further contact. Neither boy reported the incident at that time. Thereafter, the appellant began spending time alone with M.M. This led to fondling and numerous acts of oral sex between the two, which consisted of the appellant touching M.M.'s penis, and the appellant putting his penis in M.M.'s mouth. The fondling and oral sex continued through February 15, 1998.

In December of 1998, M.W. finally reported the camping incident to his mother, which led to an investigation by the Independence Police Department. As a result, the police questioned M.M. on February

1. All statutory references are to RSMo 2000, unless otherwise indicated.

19, 1999. During this initial questioning, he told the detective interviewing him that the appellant had attempted only one act of sexual contact. However, on March 27, 1999, he spoke with the detective again, during which he disclosed all of the incidents that had taken place between the appellant and himself. To build a case against the appellant, M.M. was wired to record conversations with the appellant both on March 27, 1999, and on April 10, 1999.

On May 21, 1999, an indictment was filed in the Circuit Court of Jackson County charging the appellant with eight counts of the class C felony of statutory sodomy in the second degree, § 566.064, and two counts of the class A misdemeanor of sexual misconduct in the first degree, § 566.090. On March 27, 2000, the State filed an information, in lieu of the indictment, charging the appellant as a prior offender, § 558.016.

The appellant's case was tried to a jury, commencing on March 28 and concluding on March 31, 2000. The jury found the appellant guilty of six counts of statutory sodomy in the second degree, Counts I, II, III, V, VI, and VIII, and one count of sexual misconduct in the first degree, Count IX. On May 11, 2000, after denying the appellant's motion for acquittal or for a new trial, the trial court sentenced the appellant, as a prior offender, to seven years' imprisonment for each of the six counts of second-degree statutory sodomy, and to one year of imprisonment for the count of first-degree sexual misconduct. The trial court ordered Counts I and II to run concurrent; Counts III and V to run concurrent, but consecutive to Counts I and II; and Counts VI, VIII and IX to run concurrent, but consecutive to the other counts, for a total of twenty-one years.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in sustaining the State's objection to his trial counsel's *voir dire* question, "Is there anyone who thinks that an accused person should have to testify?," because it violated his due process right to a fair and impartial jury in that the question was proper in determining whether the jury would be biased and prejudiced against him for his failure to testify. We disagree.

Our standard of review in determining whether the trial court erred in preventing the appellant from asking the challenged *voir dire* question is set out in *State v. Oates,* 12 S.W.3d 307 (Mo. banc 2000). There, the Supreme Court said:

A defendant is entitled to a fair and impartial jury. A necessary component of a guarantee for an impartial jury is an adequate *voir dire* that identifies unqualified jurors. However, the trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of *voir dire*. The judge is in the best position to determine 'whether a disclosure of facts on *voir dire* sufficiently assures the defendant of an impartial jury without at the same time amounting to a prejudicial presentation of the evidence.' Rulings by the trial court are reviewed only for an abuse of discretion. An appellate court will find reversible error only where an abuse of discretion is found and the defendant can demonstrate prejudice. Where an appellant claims that a trial court abused its discretion in conducting the *voir dire*, he has the burden of showing a 'real probability' that he was prejudiced by the abuse.

*Id.* at 310–11 (citations omitted) (emphasis in original).

 This court has previously held that a criminal defendant, in order to effectively exercise his or her Fifth Amendment right not to be compelled to testify, has a right to ask of the venire "whether they will draw an adverse inference if defendant fails to testify." *State v. Clement*, 2 S.W.3d 156, 159–60 (Mo.App.1999) (citation omitted). The State, however, contends that the challenged *voir dire* question asked by appellant's counsel was different in that it did not ask whether an impermissible adverse inference would be drawn if the appellant did not testify, but asked whether the venire "thought" defendants should be forced to testify. As pointed out by the State, as a general proposition, *voir dire* questions "touching upon a prospective juror's expectations or feelings, [are] irrelevant and properly excluded." *State v. Kreutzer*, 928 S.W.2d 854, 865 (Mo. *banc* 1996). Such a rule is apparently predicated on the notion that regardless of what a prospective juror may believe or think as to a defendant's Fifth Amendment right, all that is required to satisfy due process is that the prospective juror indicates that he or she will follow the court's instruction that no adverse inference can be drawn from the defendant's failure to testify. The State also points out that in the cases cited by the appellant, *Clement* and *State v. Clark*, 981 S.W.2d 143 (Mo. *banc* 1998), for the proposition that a criminal defendant has an absolute right to ask the question concerning a defendant's right not to testify, counsel was never allowed to ask any questions with respect to that issue, which was not the case here. In any event, we need not decide whether the trial court erred in excluding the challenged *voir dire* question in that, even if it did, the record does not support a finding of a real probability of prejudice therefrom sufficient to find reversible error.

The record reflects that after the trial court sustained the State's objection to defense counsel's *voir dire* question, he was allowed to ask the venire whether there was anyone who could not follow an instruction of the trial court that if the appellant chose not to testify, they could not draw an adverse inference therefrom, to which there were no responses. In addition, the record reflects that the jury was subsequently instructed, pursuant to MAI–CR 3d 308.14.1, that the appellant had no obligation to testify and no adverse inference could be drawn from the fact he did not. The record further reflects that the jury acquitted the appellant of one count of statutory sodomy and one count of sexual misconduct, from which it could be reasonably inferred that the jury did not hold the appellant's failure to testify against him. *State v. Bolen*, 731 S.W.2d 453, 460 (Mo.App.1987). Given these circumstances, we fail to find a reasonable probability of prejudice from the trial court's failure to allow appellant's counsel's *voir dire* question as to the venire's feelings with respect to the appellant's right not to testify.

Point denied.

## II.

 In Point II, the appellant claims that the trial court plainly erred in giving Instructions 10, 12, 14, 16, 18, 20 and 22, the State's verdict directors submitting statutory sodomy in the second degree, because they violated the appellant's "rights to a fair trial and an impartial jury and to due process of law." Specifically, the appellant claims that the instructions were identical, except for the count number referenced, and lacked any information to identify which act of sodomy the jury was being asked to consider in each instruction such that "there [was] no way to know *which* instances of statutory sodomy

were found beyond a reasonable doubt to have occurred, and no way to know if all of the jurors found [the appellant] guilty of *the same* alleged acts of statutory sodomy in their deliberations." (Emphasis in original.)

In his brief, the appellant concedes that his claim in this point was not properly preserved for review, but asks for plain error review pursuant to Rule 30.20.[2] In *State v. Hibler*, this court set forth the plain error standard of review for instructional error:

> Giving the language in [Rule 30.20] its plain and ordinary meaning, we interpret it as providing for a two-step process in determining plain error review. Under the rule, the first step involves an examination to determine whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, or in other words, whether on the face of the claim, plain error has, in fact, occurred.... Plain errors are those which are evident, obvious and clear. If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.
>
> Instructional error seldom rises to the level of plain error. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and

cause[d] manifest injustice or miscarriage of justice. The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice.

21 S.W.3d 87, 96 (Mo.App.2000) (citations omitted).

Instructions No. 10, 12, 14, 16, 18, 20 and 22, submitting to the jury seven counts of statutory sodomy in the second degree, were patterned after MAI–CR 3d 304.02 and 320.13. The appellant points out, except for the count number referenced, Instructions 10, 12, 14, 18, 20 and 22 are identical. He concedes that Instruction No. 16 is not identical in that, rather than referencing the time period of "between and including September 15, 1997, and February 15, 1999," as the other instructions did, it referenced "between and including October 7, 1997, and February 15, 1999." However, the appellant contends that "because the evidence at trial showed that all of the alleged acts of second degree statutory sodomy took place between October 1997 and December 1998, the use of the different time period in [Instruction No. 16] does not distinguish this count from the remaining counts."

 In support of his claim of error in this point, the appellant argues that the State's verdict directors violated Notes on Use 4 and 5, MAI–CR 3d 304.02, "THE PRINCIPAL OFFENSE: GENERAL RULES," which provide, in pertinent part:

**4. Time**

The first paragraph of the verdict directing instruction generally refers to the time of the offense. This is usually accomplished by saying that the offense occurred "on" or "on or about" a specific date. The words "on or about" as the

---

**2.** All rule references are to the Missouri Rules of Criminal Procedure (2001), unless otherwise indicated.

Court has said "do not put the time at large, but indicate that it is stated with approximate certainty.... [T]he phrase is used in reciting the date of an occurrence to escape the necessity of being bound by an exact date and means 'approximately,' 'about,' 'without substantial variance from,' 'near.'" *State v. Armstead*, 283 S.W.2d 577, 582 (Mo.1955).

It may be necessary to specify the time of the offense. The following situations should be considered:

. . .

(c) Multiple Offenses—Same Victim, Short Period of Time. If the defendant is charged with more than one crime involving the same victim on the same day, the time should be shown on each instruction as "at about [*time of day or night*] on" or "between the hours of [*time of day or night*] on" a specific date.

Certain offenses and circumstances may allow the state to use a less definite time period. In *State v. Walker*, 357 Mo. 394, 208 S.W.2d 233 (1948), involving a sex crime, an instruction specifying the time as "on or about the __ day of December, 1945" was approved. An instruction in a sodomy case involving a 12 year old girl that established the time as "the month of February" was upheld in *State v. Siems*, 535 S.W.2d 261 (Mo.App. E.D.1976).

If it is impossible to fix the occasion of the offense by time or date, the instruction should be modified by the Court to identify the occurrence by some other reference.

### 5. Place of Offense

The place of the offense may become of "decisive importance" under certain circumstances, such as (a) when evidence of alibi is introduced, or (b) when an issue of venue arises, or (c) where the defendant may have committed several separate offenses against the same victim at the same general location within a short space of time.

In such a situation, upon request of the defendant or on the Court's own motion, the place should be more definitely identified, such as "the front bedroom on the second floor," "the southeast corner of the basement," etc.

Rule 28.02(c) provides: "Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." The failure to give a required MAI–CR or to follow an applicable Note on Use is error. Rule 28.02(f). Even assuming, *arguendo*, however, that the State's challenged verdict directors violated one or both of the cited Notes on Use of MAI–CR 3d 304.02, as the appellant contends, in order to obtain plain error relief, he is still required to show that the State's verdict directors misdirected or failed to instruct the jury as to the offenses submitted to such an extent that manifest injustice or a miscarriage of justice resulted. *State v. Basile*, 942 S.W.2d 342, 360 (Mo. banc 1997).

The appellant contends that the jury was misdirected and confused by the challenged verdict directors, pointing to the jury's note to the court during its deliberations. In that regard, the record reflects that the jury commenced deliberations at 9:05 a.m. on March 30, 2000, and at 3:07 p.m. sent the trial court the following question: "Is it possible to have a list of locations for each count or a note of a way to distinguish what the location of each count is. (railroad-CD-field-et cetera)." The trial court, in considering its answer, made the following record:

I suppose the answer is, no, can't tell you. However, on the retrial of this

case, I would recommend that you put in the instructions the dates that you think each one happened. Because I would surmise that after they get the answer I'm going to send them, they'll throw up their hands and say well, that's it, the hell with you guys. But maybe not. Who knows.

Is it not possible that the instructions could be drawn with specific times and places on each count, as was closing argument?

The trial court answered the jury's question as follows: "The law does not allow the Court to answer this question of the jury. The jury is referred to the written instructions of the Court, the evidence, and the jury's collective recollection." Jury deliberations concluded on the first day at 4:27 p.m. and resumed at 9:25 a.m. the next day. The jury returned its verdicts at 9:50 a.m., finding the appellant guilty on all but two counts. Despite the jury's note, we find that the record supports the fact that the jury was not misdirected by the challenged instructions.

Several cases have dealt with the issue presented. In *State v. Burch*, 740 S.W.2d 293, 295 (Mo.App.1987), the court addressed the issue of whether it was plain error, as a matter of double jeopardy, to give identical verdict directors as to two counts of sodomy. In affirming the defendant's convictions, the court, distinguishing *State v. Mitchell*, 704 S.W.2d 280 (Mo.App. 1986), held that the jury was not misdirected to the extent that manifest injustice or a miscarriage of justice resulted in that the jury was instructed that each offense was to be considered separately and that the defendant's defense was the same for each count. *Burch*, 740 S.W.2d at 295–96. The *Burch* court, distinguishing *Mitchell*, in which the court reversed the defendant's convictions on two charges of exhibiting a lethal weapon, noted that the claim of er-

ror in *Mitchell* was preserved and the defense as to each charge was not the same; thus, it found that the instant case was more akin to *State v. Woodfin*, 559 S.W.2d 273 (Mo.App.1977). *Id.* In *Woodfin*, the defendant was charged with two counts of selling marijuana. 559 S.W.2d at 275. On appeal of his convictions, the defendant claimed that the giving of the verdict directors was plain error because they did not differentiate between the two offenses. *Id.* at 275–76. In affirming the convictions, the court found that it was not unreasonable to conclude that the jury understood the separate charges submitted. *Id.* at 276.

Other cases have dealt with the issue presented here, but not in the context of plain error. Nonetheless, they are instructive. In *State v. Staples*, 908 S.W.2d 189, 190 (Mo.App.1995), the court affirmed the defendant's convictions, finding that "[w]hile it may have been error for the trial court to give the two verdict directing instructions without a time reference or other identifying reference, we can discern no prejudice to defendant." The court determined that it was not prejudicial error to give identical verdict directors where the jury was instructed that the defendant was charged with a separate offense in each of the submitted counts and that it was required to consider each count separately, and where the defendant's defense did not depend upon surrounding facts and circumstances which differed greatly from count to count. *Id.* at 190–91. Likewise, in *State v. Rudd*, 759 S.W.2d 625, 630 (Mo.App.1988) (citation omitted), the court held:

We agree with the general proposition that if multiple offenses are submitted against a single defendant, the different offenses submitted should be distinguished. As much is inherent in the well established rule that the giving of

distinctive instructions is a proper method of submitting multiple offenses. Nevertheless, the possibility that the jury might be confused by an attempt to distinguish between offenses which are indistinguishable except in relation to each other is to be considered. In the case at hand, we are convinced that the jury clearly understood that the defendant was charged with different offenses in distinct counts and that each offense was to be considered separately. We find no merit in defendant's assignment of instructional error.

Finally, in *State v. Thompson*, 691 S.W.2d 322, 326–27 (Mo.App.1985), the court held that no prejudice results in failing to distinguish verdict directors where the evidence is systematically presented and argued to the jury consistent with the instructions.

In reviewing the record as a whole, it is reasonable to conclude that the jury understood that each count submitted was to be considered separately and was able to differentiate between the counts as to the alleged incidents of sodomy. In that regard, not only was the jury instructed to consider each count separately, pursuant to Instruction No. 5, but during closing argument, the prosecutor identified in great detail the specific evidence relating to the individual circumstances of each count. And, although we recognize that the jury's note to the trial court during deliberations may be some evidence of confusion, as the appellant contends, the fact that the jury subsequently acquitted the appellant on one of the sodomy counts would be some indication that it was ultimately able to differentiate between them. Further support for why the jury was not misdirected by the submission of the identical verdict directors can be found in the fact that the appellant's defense to the offenses, that the victims made up the charges because they were mad at him,

was not dependent on the differentiation between counts. Under these circumstances, we cannot say that the trial court, in giving the verdict directors in question, misdirected or failed to instruct the jury to such an extent that manifest injustice or a miscarriage of justice resulted therefrom.

## III.

In Point III, the appellant claims the trial court erred in overruling his motions for judgment of acquittal at the close of the State's evidence and at the close of all evidence because the evidence was insufficient to prove each and every element as to one count of statutory sodomy in the second degree, as required by due process. Specifically, he claims that there was no evidence establishing that he "placed his penis in [M.M.'s] mouth" with respect to the act of sodomy that allegedly occurred "right before the Fourth of July." We disagree.

Our standard or review is set forth in *State v. O'Brien:*

A challenge to the sufficiency of the evidence to support a finding of guilt is based in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. No person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.' The constitutional sufficiency of the evidence is a question of law to be determined, in the first instance, by the trial court on proper motion by the defendant and again on appeal.

When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the 'submissibility' of the case. Therefore, any guilty verdict sub-

sequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. To ensure that the reviewing court does not engage in futile attempts to weigh the evidence or judge the witnesses' credibility, courts employ 'a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored.

857 S.W.2d 212, 215–16 (Mo. *banc* 1993) (citations omitted).

The appellant was charged with statutory sodomy in the second degree under § 566.064, which provides:

1. A person commits the crime of statutory sodomy in the second degree if being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age.

2. Statutory sodomy in the second degree is a class C felony.

"Deviate sexual intercourse" for the purposes of this section is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another...." § 566.010(1). As to the count in question, the State alleged that the appellant "placed his penis in [M.M.'s] mouth," which occurred "right before the Fourth of July." The appellant claims that the evidence was insufficient to prove this re-

quired element of the State's case, necessitating a reversal.

In support of his claim, the appellant contends that the only evidence in the record as to the incident in question came from the testimony of the victim, who never actually testified that the appellant put his penis in the victim's mouth. In that regard, the appellant cites to the victim's testimony on direct by the State:

Q. And where was the other place?

A. It was in a park, another park. And I don't know exactly where that was. I think it was in Independence somewhere. It was a—it was right before the Fourth of July.

Q. How do you remember that it was right before the Fourth of July?

A. Because there were some people parked on the other side of the parking lot and they were shooting off fireworks.

Q. Was this in the day or at night?

A. It was at night.

Q. Were you guys concerned at all that there were people in the parking lot?

A. [The appellant] was at first. Then he's like, um—

Q. Were you always positioned the same way in the minivan when you would perform oral sex on the [appellant]?

A. I believe so, yes.

While it is arguable that this testimony alone was insufficient to prove that the appellant placed his penis in the victim's mouth with respect to the incident in question, when read with other testimony of the victim, we find that the evidence was sufficient.

■ A review of the record indicates that the portion of the testimony cited by the appellant was taken out of context, as the State contends in its brief. Immediately preceding the testimony quoted by

the appellant, the record reflects the following direct examination:

Q. Did the defendant have sexual contact with you at any other places besides the park as shown in the State's exhibits?

A. Yes.

Q. Can you describe the other place?

A. There was a railroad. It was—it was in a field and it was daytime. That was the only time it was daytime. He was driving. I don't—I can't remember where he was driving, but I had my head down, like this (indicating), and then when I looked up, we were going into this field. Then he stopped and he had me perform oral sex on him again. And then—

Q. By that you mean you put your mouth on his penis?

A. Yes.

Q. Do you remember how far away that place was from Harvest Hills?

A. About 25 minutes, somewhere around there.

Q. Do you know if it was in Independence or not?

A. I believe it was, but I'm not sure.

Q. Was there anybody else—was there any place else besides the park we talked about and railroad tracks where the defendant had any type of sexual contact with you?

A. Yes.

When this testimony of the victim is read with his testimony quoted by the appellant, it was sufficient for a reasonable jury to infer therefrom that the appellant put his penis in the victim's mouth with respect to the alleged incident of sodomy occurring right before the Fourth of July.

Point denied.

**Conclusion**

The judgment of the appellant's jury convictions for statutory sodomy in the second degree, § 566.064, and of sexual misconduct in the first degree, § 566.090, is affirmed.

SMART and HOWARD, JJ., concur.