David Lee CLAY, Sr., Movant/Appellant,

v.

STATE of Missouri, Respondent.

No. 68525.

Missouri Court of Appeals, Eastern District, Division Five.

June 10, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 1997.

Application to Transfer Denied Nov. 25, 1997.

Dave Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kurt U. Schaefer, Asst. Atty. Gen., Jefferson City, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

For the fourth time the appeal of David Lee Clay, Senior, from the denial of post-conviction relief, comes before this court. We reverse and remand with directions to grant the movant a new trial.

Clay was convicted in 1988 of murder in the first degree, first degree burglary, and armed criminal action, receiving a sentence of life without probation or parole on the murder count and appropriate sentences on the other charges. He filed a pro se motion for post-conviction relief under Rule 29.15. Counsel was then appointed for his post-conviction proceedings and an amended motion was filed which was neither timely nor verified. The movant was not furnished a copy of the amended motion before it was filed. Proceedings on the motion were held before a judge who had not presided at the trial. The judge held a hearing confined to the allegations of the pro se motion and declined to consider the defective amended motion. On appeal the convictions were affirmed but the court remanded the motion proceeding to determine whether counsel's failures constituted an abandonment within the holding of *Luleff v. State*, 807 S.W.2d 495, 498 (Mo. banc 1991). *State v. Clay*, 817 S.W.2d 565 (Mo.App.1991).

On remand, the circuit court found that motion counsel had indeed abandoned his client, and allowed the filing of a second amended 29.15 motion. The court then held a hearing on the grounds asserted in the amended motion and denied relief, entering required findings of fact and conclusions of law in accordance with Rule 29.15(i). The court refused to allow evidence about claimed alibi witnesses, taking the position that this issue had been covered in the prior hearing on the pro se motion. The movant's newly appointed counsel made an offer of proof of the alibi evidence. This court again reversed and remanded, holding that the alibi evidence should have been received and that, if it was consistent with the offer, there would be grounds for relief. *Clay v. State*, 876 S.W.2d 760 (Mo.App.1994). The panel did not consider other claims of error, and so these are also before us for review.

A third hearing proceeded, before still another judge. Relief was again denied, the court concluding that the testimony did not establish a viable claim of alibi. Another appeal was taken, at which we must consider all properly preserved and briefed claims of error arising out of the second and the third hearings.

■ The panel which heard the second appeal observed that the evidence against the movant was "not strong." *Clay*, 876 S.W.2d at 762. No eyewitness identified the movant from the witness stand. The shooting occurred outside the residence of his long estranged wife, with whom he had had some disagreements. The victim's son, David Clay Junior, who lived with his mother and saw the movant only occasionally, caught a glimpse of the assailant and made statements to police officers that he was "eighty to ninety percent" or "ninety to a hundred percent" sure that the gunman was his father. His expressions to various officers differed as to degree of certainty. At trial he said that he could not identify his father as the shooter and that the man he saw had a beard which was different from any he had ever seen his father wearing. His earlier statements were admissible as substantive evidence in accordance with § 491.074, RSMo 1994. Several spent .22–caliber cartridge cases were found at the scene of the shooting and markings on some of these matched the markings on similar cartridge cases found in the back yard of the movant's house. The relative strength or weakness of the prosecution's case is significant in determining whether any deficiencies

in trial counsel's performance were prejudicial, because the question which must be answered is whether, but for the deficiencies, the result of the trial might have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Amrine v. State*, 785 S.W.2d 531, 535 (Mo. banc 1990).

### Alibi

 In his first point for reversal the movant asserts that counsel was constitutionally ineffective in not investigating leads movant provided to establish an alibi. At the hearing on the second remand, Mary Williams, the movant's sister, testified to a telephone conversation with the movant when she called him at his home shortly after the time of the shooting and talked to him. This testimony, if believed, would support an alibi because it was consistent with the time of the shooting and the movant's home was in Jennings, a substantial distance from the scene of the shooting in Wellston. The movant's trial counsel testified, however, that the movant had first told him that he talked to Williams at dawn, and then, after persistent questioning, fixed the time at 3 a.m., whereas the shooting had occurred at or shortly after 12:45 a.m. Counsel's pre-trial conversation with the movant thus demonstrated no reason for interviewing Williams, who was not at the scene. Counsel is entitled to rely on the information provided by his client as to witnesses whose testimony might be helpful, unless there are positive indications that the information is unreliable. Any failure to interview Williams was the fault of the client and not of his counsel. The 1994 panel strongly suggested that the movant would be entitled to relief if the offer of proof was supported by evidence, but trial counsel did not testify as indicated until after the remand.

### Other Identifications

 Points II and IX have to do with the Clay Junior's conversations with police following the shooting. As has already been said, he told police officers that his father could have been the gunman, with greater or lesser expressions of certainty.

Officer Ralph Shoemake overheard a conversation between Clay Junior and a police captain in which Clay Junior said that the man he saw outside the apartment with a gun was one Willie James Johnson. Shoemake also spoke with Clay Junior who, he later testified, told him that he was "almost 100 percent" sure that a man he saw standing near the corner of the house where the shooting took place was his father. The state suggests that the conversation Shoemake overheard was taken out of context, but his report seems sufficiently clear to indicate that investigation was in order.

Police Lieutenant Edward Robertson testified that he had asked Clay Junior "if anyone fit the general characteristics of the subject who did the shooting on [victim]. And he stated that the man—a man known as Tent Man fit the general characteristics." Tent Man was later identified as an individual who does not otherwise appear in the testimony.

When one considers the various expressions used by Clay Junior in his conversations with police officers referring to his father, together with his inability to make any identification at trial, his identification or suggestion of others as the possible gunman would have been of great assistance to defense counsel. The officers were easily ascertainable and quite available for interview or deposition. A prudent lawyer defending a first degree murder charge would be expected to interview the investigating officers, especially when he knew that Clay Junior had spoken with them and had indicated the strong likelihood that the movant was the shooter.

 The trial court ruled points II and IX against the movant because Clay Junior was not called as a witness at the second post-conviction hearing. This is not a sufficient reason. Although orderly procedure dictates that a witness must be confronted with allegedly inconsistent statements offered for purposes of impeachment, the statements may be established by other testimony if the witness denies making them. Thus, the inconsistent statements could be received into evidence under § 491.074 either by the witness's admissions or by the testimony of

others who heard them. The 29.15 hearing is not a trial of the charges. Its purpose is to receive evidence touching on the adequacy of counsel's performance. The officers' testimony shows that important evidence was available if only counsel had looked for it.

The officers' testimony is uncontradicted. The movant's trial counsel testified at two of the three hearings but said nothing about Clay Junior's having identified other possible suspects. Because of the indefiniteness of Clay Junior's pretrial statements, his inability to identify the gunman at trial, and the absence of any other identifying testimony, it is quite possible that the evidence of his statements to the police officers might have led to a different result at trial, by inducing a reasonable doubt in the minds of jurors, thus meeting the *Strickland* test. The court's findings of fact are not adequate to dispose of the issue. There is no evaluation of the claim of insufficient investigation or of its possible effect on the outcome.

### Other Points

The other points raised by the movant are without merit and may be quickly disposed of.

■ Trial counsel, by motion in limine, objected to the receipt into evidence of Clay Junior's testimony as to the probability that the gunman was his father, but the motion was not renewed at trial. If the motion was worth making it would appear that it is worth renewing, but the objection lacks merit. The jury could hear the estimate and give it appropriate weight. Cf. *State v. Linzia*, 412 S.W.2d 116, 120 (Mo.1967).

■ Point IV asserts inadequacy in failing to object to the use of a rifle which was admittedly not the one used in the fatal shooting. The rifle was used by the prosecution in asking a witness to describe a weapon owned by the movant. The use of "props" is recognized, *State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995), and the prosecutor made no claim that the weapon was the one actually used. Any objection would have been unmeritorious.

■ Point V complains of the prosecutor's argument that the concept of "reasonable doubt" applied only to the elements of the offense stated in the instruction and not to each piece of evidence. We are not persuaded that the argument injected legal error, or that, had it not been made, the result would have been different. Cf. *State v. Jones*, 655 S.W.2d 708 (Mo.App.1983).

■ The movant, in pretrial statements to the police, denied having weapons in his house. In executing a search warrant the officers found a rusty, loaded shotgun and a b.b. pistol. In Point VI it is argued that evidence of finding these weapons was unreasonably prejudicial to the movant and that counsel represented him inadequately in not objecting. We believe that, given the movant's false statement, the testimony was not objectionable or misleading. The fact that the shotgun was loaded is significant.

■ A woman who had an affair with the movant gave damaging testimony about his possession of a rifle. In Point VII he asserts inadequacy in counsel's failure to impeach her by showing that she lived in a homeless shelter, rather than with the movant, and that she had had hallucinations. Trial counsel testified that the movant had been convicted of an assault on this witness, receiving a long sentence, and that he held off on cross-examining her in depth because he was afraid that he might open the door to evidence of this very damaging circumstance. His testimony demonstrates a reasonable tactical decision.

■ Point VIII complains about counsel's failure to refute testimony of a dispute with his estranged wife over child support, or to offer testimony regarding other persons who had disagreements with her. His wife was not a victim of the shooting, and we fail to see how the suggested testimony could reasonably be expected to make a difference in the result. Nor are we persuaded that there is merit in Point X, which complains of counsel's failure to show that others had access to the house where the movant lived and where spent casings matching those found at the scene of the crime were located. In contrast to the disposition of points II and IX, the court below ruled on these latter

points in appropriate findings, and concluded that the movant had not established that the evidence, if received, would likely change the result.

### Disposition

■■■ For the reasons stated in the discussion of Points II and IX further proceedings are necessary. In the normal course we would probably remand the case for additional findings on these points. We believe, however, that this is a case which we may justifiably dispose of finally by entering the judgment the trial court should have entered for the following reasons: (1) there have already been three post-conviction hearings; (2) the evidence of inadequate investigation is uncontradicted; (3) although trial counsel testified twice, he was not asked about and gave no explanation for not interviewing the officers about other persons Clay Junior, suggested as possibly being, or resembling, the shooter, and no reason of trial strategy is argued; and (4) the present motion judge did not preside at the trial and did not hear the evidence relating to points II and IX, and so he has no particular advantage in reviewing the record. Rule 84.14. The judge whose findings are under review has retired and the knowledge of the original trial judge, even assuming that he is not recused, is nine years old.

The state notes that Clay Junior testified at trial that he told the officers that the gunman could have been his father or might have been someone else. It is argued from this that the jury knew that Clay Junior had identified another man and was unimpressed. The argument is not persuasive. This portion of the trial testimony was not emphatic and counsel well might have missed it, because he neither cross-examined nor argued about this statement. Had he known of Clay Junior's pointing to others in statements to the police he would be in a much better position to make use of the varying identifications.

The state argues that the scope of cross-examination "must in virtually every case be left to the judgment of counsel." *Lytle v. State*, 762 S.W.2d 830, 837 (Mo.App.1988). The problem, however, is that counsel lacked the information to make an informed judgment because of inadequacies in his investigation. *State v, Twenter*, 818 S.W.2d 628, 642 (Mo. banc 1991). An argument based on trial strategy or tactics is appropriate only if counsel is fully informed of facts which should have been discovered by investigation.

The state also cites *Lytle* and other cases for the proposition that use of impeaching evidence is a matter of trial strategy which will not normally serve as a basis for finding ineffective assistance. The point is not appropriate here. Clay Junior's testimony as to a high probability that the movant was the gunman goes far beyond impeachment. It is substantive evidence of the most damning sort in this frail record. Contrary or conflicting statements to the officers also constitute substantive evidence. There is no indication that counsel made a strategic or a tactical decision not to cross-examine Clay Junior about his statements to the officers. He never reached the point of decision because he lacked the necessary information. Cf. *Twenter*, 818 S.W.2d at 642.

■■■ Failure of defense counsel to pursue even a single piece of important evidence may demonstrate ineffectiveness and prejudice sufficient to warrant a new trial. *State v. Wells*, 804 S.W.2d 746, 748 (Mo. banc 1991); *see also Moore v. State*, 827 S.W.2d 213 (Mo. banc 1992). The jury may have thought that Clay Junior's statements to the police were more credible than his trial testimony. They might have had different thoughts if the inconsistencies in his pretrial statements had been brought out. Only Clay Junior's statements even suggest that the movant was present at the scene.

We conclude from the whole record that counsel was constitutionally ineffective for failure to interview the police officers who spoke with Clay Junior after the shooting and that, had he made an appropriate investigation and brought the conflicting statements to the attention of the jury, there is a reasonable probability that the result of the trial might have been different. The test of *Strickland* and the Missouri cases following it is satisfied. *See State v. Butler*, 951 S.W.2d 600 (Mo. Banc 1997).

The judgment denying post-conviction relief is, therefore, reversed and the case is remanded to the circuit court with directions to vacate the convictions and to afford the movant a new trial.

AHRENS, C.J., and CRANDALL, J., concur.