**William C. PERKEY, III, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 59130.**

Missouri Court of Appeals,
Western District.

Dec. 26, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 29, 2002.

Application for Transfer Denied
March 19, 2002.

**548**

Mark A. Grothoff, Asst. Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ROBERT G. ULRICH, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

William Clark Perkey was convicted of involuntary manslaughter, § 565.024, RSMo 1994, and sentenced to five years imprisonment. This court affirmed his conviction on June 15, 1999, in a *per curiam* order and unpublished memorandum opinion. Perkey filed a *pro se* Rule 29.15 motion on November 5, 1999, and an amended motion was filed on February 10, 2000. After an evidentiary hearing, the motion was denied on August 23, 2000. Perkey brings this appeal.

The evidence at trial showed that Perkey and Chris Desmangles were drinking beer at a friend's house on the evening of September 25, 1997, when they decided to leave to pick up a pizza. As Perkey was driving his pickup truck southbound on Creasy Springs Road, north of Columbia, Missouri, his truck veered into the northbound lane and collided with a Cadillac driven by Carolyn Courtney. Perkey's driver's side headlight struck the driver's side headlight of Courtney's car. Perkey's truck went into a ditch on the southbound side of the road, hit a couple of mailboxes, traveled across both the southbound and northbound lanes, and eventually came to a rest after hitting a tree.

After the truck came to a stop, Desmangles noticed that no one got out of the Cadillac, so he left the truck and ran to the car. When he looked in the driver's side of the car, he noticed that Courtney was having trouble breathing. He opened the door and asked her what was wrong, and she responded that she was having an asthma attack. He ran to a neighbor's house to call the police, but they had already alerted authorities. Desmangles ran back to the Cadillac and tried to calm Courtney, who was having greater difficulty breathing. When the paramedics arrived, they observed that Courtney was unresponsive, breathing only four to six times a minute, and had a very slow pulse. They moved her to the ambulance and attempted to restore her breathing. Because she was vomiting, they inserted an intratracheal tube down her nose and throat to open her airway and prevent vomit from aspirating her lungs. Courtney stopped breathing on the way to the hospital and went into cardiac arrest. When she arrived at the hospital, she was

having seizures and was placed on life support. She died the following morning.

Perkey was arrested at the accident scene after he failed to satisfactorily perform a field sobriety test. A highway patrolman noted that his breath smelled of alcohol, his speech was slurred and he was unsteady on his feet. At the station, Perkey was given two additional sobriety tests that indicated he was intoxicated. Shortly before midnight, he was given a breathalyzer test, which showed a blood alcohol concentration of .128 percent.

At Perkey's trial, Dr. Jay Dix, who performed the autopsy, stated that Courtney's death was the result of an abnormal heartbeat brought on by the car accident. He testified at trial that, "had the accident not occurred, [Mrs. Courtney] wouldn't have died at that time."

■ In his first point on appeal, Perkey argues that he was denied effective assistance of counsel because his defense attorney failed to interview and call as a witness Dr. Don Whitener, Courtney's family doctor. Perkey claims that Dr. Whitener would have testified that Courtney might have died from complications related to her numerous health problems and not the car accident.

■ Our review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Skillicorn v. State,* 22 S.W.3d 678, 681 (Mo. banc 2000). In order to prove that his trial counsel was ineffective, Perkey must show that his attorney's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that counsel's deficient performance prejudiced him. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984)). Prejudice is established by demonstrating that, but for counsel's action, there is a reasonable probability that the trial would have resulted in a different outcome. *Id.* " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Moore v. State,* 827 S.W.2d 213, 215 (Mo. banc 1992) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). "To prevail on a claim of ineffective assistance of counsel for failure to call a witness to testify, the appellant must show that the 'decision involved something other than reasonable trial strategy; that the witness could have been located through reasonable investigation; that the witness would have testified; and that the witness' testimony would have provided the defendant with a viable defense.' " *Vogel v. State,* 31 S.W.3d 130, 146 (Mo.App. W.D.2000) (quoting *State v. Gilpin,* 954 S.W.2d 570, 576 (Mo.App.1997)).

At the evidentiary hearing on Perkey's Rule 29.15 motion, Perkey's defense attorney testified that during discovery he received medical records regarding Courtney's treatment in the emergency room. The medical records included information regarding Courtney's medical history and indicated that she suffered from numerous health problems, including severe asthma and obesity. The records also identified Dr. Don Whitener as Courtney's family doctor. Defense counsel made no attempt to contact Dr. Whitener for an interview. He testified that he decided not to call Dr. Whitener as a witness because he believed Courtney's family doctor would have an "emotional attachment" to her and that his testimony would not be favorable to Perkey's case. Defense counsel made this determination without ever speaking to Dr. Whitener. Defense counsel also testified that after the trial, Dr. Whitener contacted him by telephone and told him that he possessed relevant evidence that was

not presented at trial and that he believed Courtney's death was not caused by the accident. Defense counsel testified that before receiving the phone call, he did not realize that Dr. Whitener believed Courtney's death might not have been caused by the accident. In retrospect, Perkey's trial attorney stated that he should have at least talked to Dr. Whitener.

Dr. Whitener also testified at the Rule 29.15 hearing and denied contacting Perkey's defense counsel after the trial. Dr. Whitener testified that Courtney had a history of extensive health problems. He also testified that he examined her after the accident and that, in his opinion, the accident may not have caused her death. When asked if she had died as a result of the accident, he stated, "I'm not for sure. I think there's a reasonable doubt.... I think there are other factors that could have killed Mrs. Courtney at that time." He also stated that if he had been called as a witness, he would have testified that he had doubts about whether the accident caused Courtney's death.

Dr. Dix had written on Courtney's death certificate that the cause of her death was "cardiac arrhythmia due to hypertensive and arteriosclerotic heart disease." When Dr. Whitener was asked if he agreed with Dr. Dix's determination, he testified, "There's no way Dr. Dix can say this patient died of cardiac arrhythmia from an autopsy." Dr. Whitener testified that his diagnosis, when he filled out the discharge summary at the hospital, was the following:

> Cardiopulmonary arrest, etiology undetermined. History of apparent involvement in a motor vehicle accident without obvious injuries related thereto. Anoxic encephalopathy. Seizures status epilepticus related to the above. Severe chronic obstructive bronchopulmonary disease related to previous smoking with an asthmatic component. History of hypoventilation related to obesity. Transient atrial fibrillation following admission. Hyperglycemia. Exogenous obesity.

The motion court found that the decision not to call Dr. Whitener as a witness was a matter of trial strategy:

> Although characterized as a claim of ineffective assistance of counsel based on failure to investigate, this claim challenges the presentation of evidence. Movant argues that Dr. Whitener's testimony that other things 'might have caused' the victim's death was better than challenging Dr. Dix's opinion as a medical examiner by cross-examination and having the family testify as to the victim's physical condition. This was a matter of presentation of evidence and a matter of trial strategy.

> This court finds that the testimony of Dr. Whitener would not have presented Movant with a viable defense. Dr. Whitener's objection to the jury's finding of guilt would not have been controlling in a criminal trial. As noted in the memorandum opinion on direct appeal, the jury weighed the testimony of Dr. Dix and his failure to entertain a possibility that a drug reaction was the cause of the victim's death. The jury decided Dr. Dix's reliability and credibility, and this issue was not for Dr. Whitener.

> .... Moreover, Dr. Whitener's belief that he would have disagreed with Dr. Dix with regard to completion of the death certificate under the circumstances of this case would not have provided the Movant with a more viable defense than what was raised at trial by counsel.

> This claim is denied because Movant has failed to establish the specific information that trial counsel should have discovered that would have resulted in a

viable defense for Movant at trial. This Court concludes that trial counsel's statement at the motion hearing that Dr. Whitener's testimony concerning the asthma would have presented Movant with a viable defense at trial is not supported by Dr. Whitener's testimony at the motion hearing or the transcript of the criminal proceedings.[1]

The motion court's reliance on this Court's appellate decision is misplaced. Perkey's argument on direct appeal was that the evidence was insufficient because it did not take into account the fact that Courtney was taking numerous medications and may have died from a drug reaction. On direct appeal, the Court did not address the issue of whether defense counsel should have interviewed Dr. Whitener and called him as a witness. The Court indicated, however, that such evidence would have been relevant, noting that Perkey "presented the jury with no expert medical evidence that contradicted Dr. Dix's conclusion as to the cause of Mrs. Courtney's death." In other words, this Court's holding that the evidence was

sufficient to establish that the accident did cause Courtney's death was based on Dr. Dix's testimony and the fact that there was no expert testimony to contradict his opinion. The record of the Rule 29.15 hearing demonstrates that had defense counsel interviewed Dr. Whitener, he would have discovered that Dr. Whitener was prepared to testify that he had serious doubts about whether the accident caused Courtney's death. Such testimony may have raised reasonable doubt about the cause of Courtney's death.

■■■ "There are numerous cases in which post-conviction relief has been granted because of counsel's failure to interview witnesses or to check out leads." *Blankenship v. State*, 23 S.W.3d 848, 852 (Mo.App. E.D.2000) (citing *State v. Butler*, 951 S.W.2d 600 (Mo. banc 1997); *Moore[v. State]*, 827 S.W.2d 213; *Clay v. State* 954 S.W.2d 344 (Mo.App.1997)). " 'Counsel has a duty to make reasonable professional investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Moore*, 827 S.W.2d at 215 (quoting *State v. Griffin*, 810 S.W.2d 956,

---

1. The motion court was troubled by Dr. Whitener's testimony regarding his belief that Courtney did not die from an asthma attack. Dr. Whitener testified that he read articles in the newspaper implying that Dr. Dix believed the accident caused Courtney to have enough "fright that her asthma killed her." Dr. Whitener testified that he "had never heard of that before." The court noted that this testimony was irrelevant, because at trial, Dr. Dix did not attribute Courtney's death to asthma. In fact, Dr. Dix testified at trial that his microscopic examination of her lung tissue revealed that she did not die from asthma. Both doctors apparently agreed that asthma was not the cause of death. As stated by the court, "I don't know where this Dr. Whitener is coming from on that particular issue. Because he's the one that has injected the asthma into this case." The motion court found that because Dr. Dix never testified that Courtney died from an asthma attack, Dr. Whitener's testimony regarding his mistaken belief that

Dr. Dix had attributed her death to asthma was not relevant. The motion court correctly rejected defense counsel's statement at the hearing that Dr. Whitener's opinion regarding the asthma would have provided Perkey with a viable defense. Dr. Dix never attributed Courtney's death to asthma. Dr. Whitener's testimony that he disagreed with Dr. Dix on the issue was incorrect, because Dr. Whitener was mistaken about Dr. Dix's opinion.

The court properly noted that Dr. Whitener's statements about Courtney's asthma did not address any relevant issues in the case and would not have provided Perkey with a defense. However, Dr. Whitener also testified that Courtney may not have died from the accident, and that testimony did contradict Dr. Dix's opinion. In rejecting the portion of Dr. Whitener's testimony that was not relevant to the case, the court appears to have overlooked testimony that could have provided a defense for Perkey.

958 (Mo.App.1991)). "An argument based on trial strategy or tactics is appropriate only if counsel is fully informed of facts which should have been discovered by investigation." *Clay,* 954 S.W.2d at 349.

The record shows that Perkey's defense attorney obtained Courtney's medical records during discovery. The medical records indicated that Courtney suffered from numerous health problems and that Dr. Whitener was her family doctor. The defense attorney testified that he had the opportunity to contact Dr. Whitener, but chose not to because he did not believe his testimony would be helpful to Perkey. The record from Perkey's 29.15 motion hearing shows that this determination, made without first interviewing Dr. Whitener, was incorrect. Had defense counsel interviewed Dr. Whitener, he would have discovered that Dr. Whitener was prepared to testify that Courtney's death might not have been caused by the accident.

The failure to interview a witness that could have contradicted the testimony of the State's witness as to the cause of Courtney's death resulted in prejudice to Perkey. Defense counsel could not have made an informed decision about whether to call Dr. Whitener as a witness without first interviewing him. Had counsel interviewed Dr. Whitener, it is unlikely he would have decided not to call him as a witness, because Dr. Whitener's testimony would have raised doubt as to Dr. Dix's determination of the cause of Courtney's death. This testimony, had it been presented to the jury, could have changed the outcome of the trial.

The State argues that Dr. Whitener's testimony was redundant, noting that Perkey's defense attorney elicited testimony from Dr. Dix about Courtney's health problems and the numerous medications she was taking. The State argues that additional testimony from Dr. Whitener regarding Courtney's health problems would not have added anything to Perkey's case. But Dr. Whitener would have done more than simply identify Courtney's health problems, he would have also cast doubt on Dr. Dix's determination that the accident caused her death. While counsel's failure to interview Dr. Whitener and call him as a witness may not have changed the result, "that very real probability cannot be ignored, and meets the minimum standard of undermining confidence in the outcome of the case." *Moore,* 827 S.W.2d at 215. Because of our disposition of this point, we need not address Perkey's second point on appeal.

The judgment is reversed and the case is remanded with directions to sustain the Rule 29.15 motion and grant the defendant a new trial.

All concur.