**Christopher KUEHNE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 60642.**

Missouri Court of Appeals,
Western District.

Feb. 28, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 24, 2003.

Application for Transfer Denied
July 1, 2003.

Susan L. Hogan, Kansas City, MO, for appellant.

Audara L. Charlton, Assistant Attorney General, Jefferson City, MO, for respondent.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

Mr. Kuehne appeals the denial of his Rule 29.15 motion for post-conviction relief, without an evidentiary hearing. A jury convicted Mr. Kuehne of two counts of statutory rape, section 566.032, RSMo 1994,[1] and four counts of statutory sodomy,

---

**1.** All statutory references are to the Revised Statutes of Missouri 1994.

section 566.062. On appeal, Mr. Kuehne claims the motion court clearly erred in denying, without an evidentiary hearing, his Rule 29.15 motion for post-conviction relief. Mr. Kuehne's basis for post-conviction relief is that his trial counsel was ineffective in several areas. First, he avers that trial counsel failed to call several impeachment and character witnesses. Second, he claims that trial counsel failed to control a State witness on cross-examination. Third, he asserts that trial counsel failed to object to the giving of identical verdict directors to the jury. Fourth, he contends that trial counsel failed to investigate and locate impeachment evidence. Finally, he claims that trial counsel failed to present expert testimony that would have benefited his defense. Because Mr. Kuehne has pled facts entitling him to an evidentiary hearing on his claim of ineffective assistance of counsel for failure to call four impeachment witnesses, that portion of the motion court's judgment is reversed and the cause is remanded for a hearing on that issue. His motion fails to set forth facts that entitle him to an evidentiary hearing on the remainder of his claims, so the motion court's denial of these claims is affirmed.

### Factual and Procedural Background

Mr. Kuehne met Connie Guerrero in 1985. The two dated until 1989. On March 22, 1989, their daughter, K.K., was born. Following K.K.'s birth, Mr. Kuehne filed a paternity suit. During the paternity suit, Ms. Guerrero filed two reports alleging that Mr. Kuehne had sexually abused K.K. In 1990, Ms. Guerrero filed a report with the Division of Family Services. She claimed that after a visit with Mr. Kuehne, she noticed that K.K.'s diaper had been unfastened and contained grass. In 1991, Ms. Guerrero filed a report with the Kansas City Police Department and the Division of Family Services. She claimed K.K.

was having nightmares, would grab her vaginal area, put her finger into her vagina and say, "He does this," and told her, "My daddy hurts my bottom." The Division of Family Services determined that both claims were unsubstantiated.

The paternity suit was resolved in 1994, and Mr. Kuehne was granted reasonable visitation. Mr. Kuehne visited and babysat K.K., unsupervised, until June 1996. In December 1997, Mr. Kuehne attempted to pick K.K. up at her grandparent's house, but she refused to go with him. This was the last time K.K. saw Mr. Kuehne. In 1998, Ms. Guerrero again contacted the Kansas City Police Department, to report that K.K., who, at that time, was nine years old, had told Ms. Guerrero that Mr. Kuehne had forced her to engage in numerous sexual acts. Subsequently, K.K. was interviewed by Officer David Nathan and Julie Donelon, a forensic interviewer with the Children Protection Center. Dr. Bruce Peters also performed a Safe Exam on K.K. On July 24, 1998, Mr. Kuehne was charged with two counts of statutory rape in the first degree, section 566.032, and four counts of statutory sodomy in the first degree, section 566.062, for having sexual intercourse and deviate sexual intercourse with K.K. from March 22, 1995, to June 30, 1996.

At trial, K.K. and Ms. Guerrero testified that, beginning when K.K. was six years old, Mr. Kuehne had sexual intercourse with K.K. twice; touched K.K.'s vagina, anus, and mouth with his finger; put his tongue and penis in K.K.'s mouth more than one time and ejaculated in K.K.'s mouth; took pictures of K.K. naked; showed K.K. a book with pictures of adults engaged in sexual acts with children; gave her pills that made her sleepy; and threatened to cut off her head and Ms. Guerrero's head if K.K. told anyone about what he was doing. The State also presented

testimony from Officer Nathan, Ms. Done-lon, and Dr. Peters. Mr. Kuehne testified on his own behalf and denied any sexual contact with K.K. His defense was that Ms. Guerrero fabricated the allegations of sexual abuse and imposed them on K.K.

The jury convicted Mr. Kuehne on all counts. The trial court, following the jury's recommendation, sentenced Mr. Kuehne to two consecutive terms of life imprisonment for the statutory rape convictions, and to two terms of twenty-five years imprisonment and two terms of fifteen years imprisonment for the statutory sodomy convictions. The statutory sodomy convictions are concurrent to each other, and one of the twenty-five year sentences is consecutive to the life imprisonment sentences. This court affirmed Mr. Kuehne's convictions on December 3, 2000. *State v. Kuehne*, 37 S.W.3d 298, 299 (Mo. App.2000).

Subsequently, Mr. Kuehne filed a *pro se* Rule 29.15 motion for post-conviction relief, which was later amended by his appointed counsel. In the motion, Mr. Kuehne alleged ineffective assistance of counsel at trial and on appeal. The motion court denied Mr. Kuehne's Rule 29.15 motion without an evidentiary hearing because it held that Mr. Kuehne failed to allege facts that were not refuted by the record, and Mr. Kuehne's motion failed to allege facts which show prejudice. Mr. Kuehne filed this appeal.

### Standard of Review

In reviewing the denial of a motion for post-conviction relief, this court is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). Such a finding will be made only if, after a review of the entire record, the appellate "court is left with the definite and firm impression that a mistake has been made." *Moss*, 10 S.W.3d at 511.

Unlike when reviewing other civil proceedings, "courts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). An evidentiary hearing on a motion for postconviction relief will be required only if the movant satisfies three requirements: (1) the movant must plead facts, not conclusions, which, if true, would warrant relief; (2) the facts pled must not be refuted by the record; and (3) the movant must have been prejudiced. *Id.* at 822–23. When the basis for relief is ineffective assistance of counsel, the movant is entitled to an evidentiary hearing if the movant "allege[s] facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was thereby prejudiced." *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 371, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Prejudice is shown when the movant establishes "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998).

### Evidentiary Hearing Warranted on Failure to Call Four Impeachment Witnesses

In his first point, Mr. Kuehne alleges that the motion court clearly erred in denying, without an evidentiary hearing, his claim that trial counsel was ineffective for failing to investigate, interview, and call a number of impeachment and charac-

ter witnesses. The impeachment witnesses are Greg Guerrero, Carly Guerrero, Elizabeth Nigro Hill, Marco Roldan, and Sherrill Rosen. The character witnesses are Terry Horn, Jessica Horn, Margaret White, and Sophie White. "To obtain a hearing based on counsel's failure to investigate, appellant must specifically identify who the witnesses were, what their testimony would have been, whether or not counsel was informed of their existence, and whether or not they were available to testify." *Morrow*, 21 S.W.3d at 823. To warrant a hearing on a claim that defense counsel was ineffective for failing to call a witness to testify, the movant must allege: "(1) that the witness could have been located through a reasonable investigation, (2) what the witness would have testified to if called, and (3) that the witness's testimony would have provided a viable defense." *White v. State*, 939 S.W.2d 887, 899 (Mo. banc 1997).

■ Mr. Kuehne also must overcome the presumption that trial counsel's decision not to call a witness is a matter of trial strategy. *Bucklew v. State*, 38 S.W.3d 395, 398 (Mo. banc 2001). However, " '[a]n argument based on trial strategy or tactics is appropriate only if counsel is fully informed of facts which should have been discovered by investigation.' " *Perkey v. State*, 68 S.W.3d 547, 552 (Mo.App. 2001) (quoting *Clay v. State*, 954 S.W.2d 344, 349 (Mo.App.1997)). "Strategic choices made after less than a thorough investigation are only reasonable to the extent that reasonable professional judgment would support the choice not to investigate further." *Anderson v. State*, 66 S.W.3d 770, 776 (Mo.App.2002).

Mr. Kuehne's allegations with respect to Greg Guerrero, Carly Guerrero, Elizabeth Nigro Hill, and Marco Roldan are sufficient to warrant an evidentiary hearing. Mr. Kuehne pled in his amended motion

that trial counsel was ineffective for failing to call these witnesses because they would have impeached Ms. Guerrero's testimony and supported his defense that Ms. Guerrero fabricated the charges of sexual abuse. Mr. Kuehne claimed that he told trial counsel about these four witnesses, where they could be located, and the nature of their proposed testimony. He also alleged that they were willing to testify on his behalf. In addition, Mr. Kuehne pled that in support of this claim he would present their testimony at an evidentiary hearing, and the testimony of his trial counsel that although Mr. Kuehne told her about these witnesses, she did not investigate, interview, or call any of them.

■ The remaining issue, then, is whether their testimony would have provided Mr. Kuehne with a viable defense. The motion court expressly found that their testimony would not provide him with a viable defense. The defense Mr. Kuehne put forward, which the court found was not viable, was that the testimony of Greg and Carly Guerrero, Elizabeth Nigro Hill, and Marco Roldan would impeach Ms. Guerrero's testimony by calling into question her truth and veracity. It is true that trial counsel's failure to impeach a witness, alone, does not warrant postconviction relief. *Barnum v. State*, 52 S.W.3d 604, 608 (Mo.App.2001). "The movant has the burden of establishing that the impeachment would have provided [the movant] with a defense or would have changed the outcome of the trial." *Id.* The movant must also "overcome the presumption that counsel's decision not to impeach was a matter of trial strategy." *Id.* However, as noted above, " '[a]n argument based on trial strategy or tactics is appropriate only if counsel is fully informed of facts which should have been discovered by investigation.' " *Perkey*, 68 S.W.3d at 552 (quoting *Clay*, 954 S.W.2d at 349). In

his motion, Mr. Kuehne pled that his trial counsel will admit that she did not make any investigation into these witnesses.

 Since Mr. Kuehne has alleged facts which show that trial counsel's decision not to call these witnesses was not a matter of trial strategy, the next issue is whether the witnesses' testimony would be admissible. "Counsel will not be deemed ineffective for failing to present inadmissible evidence." *Barnum*, 52 S.W.3d at 608. Nevertheless, evidence that is otherwise inadmissible may be admissible to impeach a witness's testimony. "The purpose of impeachment is to impair or destroy a witness's credibility or render questionable the truth of his particular testimony. Because the jury is to assess credibility, it is entitled to any information which might bear significantly on the veracity of a witness." *State v. Russell*, 625 S.W.2d 138, 141 (Mo. banc 1981). In addition, "[a]nything that has the legitimate tendency to throw light on the 'accuracy, truthfulness, and sincerity of a witness is proper for determining the credibility of the witness.'" *State v. Hahn*, 37 S.W.3d 344, 355 (Mo.App.2000) (quoting *State v. Strughold*, 973 S.W.2d 876, 891 (Mo.App.1998)).

With regard to Greg and Carly Guerrero, Mr. Kuehne alleged that Greg Guerrero, Ms. Guerrero's ex-husband, would have testified that Ms. Guerrero falsely accused him of molesting Carly, one of their daughters. Mr. Kuehne further pled that Carly Guerrero would have testified that Ms. Guerrero confided to her that Ms. Guerrero had been the victim of sexual abuse when she was younger. Mr. Kuehne alleged that Carly would have further testified that Ms. Guerrero repeatedly asked her if her father had touched her inappropriately. After Ms. Guerrero became involved with Mr. Kuehne, Ms. Guerrero also repeatedly asked Carly if Mr. Kuehne had touched her inappropriately. Carly would have testified that nothing inappropriate had ever occurred with either her father or Mr. Kuehne and she continually told her mother this. Nevertheless, Ms. Guerrero insisted that something inappropriate had taken place and would badger Carly to convince her of this. Carly Guerrero would have testified that she finally moved out of Ms. Guerrero's home to live with her father so she could "get away from her mother's insistence that Carly had been sexually molested."

 The testimony of Greg and Carly Guerrero throws light on Ms. Guerrero's credibility because it shows that she previously made false accusations of sexual abuse and tried to impose such accusations on one of her other daughters. Generally specific acts are inadmissible as impeachment evidence, and the testimony of Greg and Carly Guerrero deals with specific acts of misconduct by Ms. Guerrero. "[I]mpeaching testimony should be confined to the real and ultimate object of the inquiry, which is the reputation of the witness for truth and veracity." *State v. Wolfe*, 13 S.W.3d 248, 258 (Mo. banc 2000). Nevertheless, when a specific act of misconduct is relevant to show a witness's bias, it has probative value. *Id.* "As for bias, the general ban on impeachment of witnesses through proof of prior (unconvicted) misconduct has three exceptions: where the inquiry shows (1) a specific interest; (2) a possible motivation to testify favorably for the State; or (3) an expectation of leniency." *Id.* The "specific interest" exception applies to evidence that "demonstrate[s] a specific bias against [the] defendant." *Id.*

This court has allowed the introduction of past accusations of sexual abuse to show a witness's bias against the defendant in a sexual abuse case. *State v. Hedrick*, 797 S.W.2d 823, 826 (Mo.App.1990). In *Hedrick*, Mr. Hedrick was convicted of first

degree sexual abuse and sodomy of his ten-year-old daughter. *Id.* at 824. Mr. Hedrick's defense was that his daughter lied because she did not want to be removed from her mother's custody or "that the story was concocted by the mother as a weapon against the father, ... and her story was adopted by the pliant youngster." *Id.* at 825. During the trial, Mr. Hedrick wanted to introduce evidence to show the "tempestuous" relationship between the victim's mother, his mother, and himself, the tumultuous relationships in the victim's mother's household, and evidence of the daughter's relationship with each parent and grandparent. *Id.* at 824–25. Mr. Hedrick also wanted to introduce evidence that the mother previously accused him of sexual abuse before she moved to modify their custody arrangement, and that the Division of Family Services ruled the claim unsubstantiated. *Id.* at 824. Mr. Hedrick's purpose in introducing this evidence was to impeach the victim's testimony by showing her motive for fabricating the incident. *Id.*

The trial court excluded Mr. Hedrick's proposed evidence. *Id.* This court overruled the trial court and held the evidence was relevant to show the witness's bias and credibility. *Id.* at 826. This court explained that "[e]specially in the case of young child witnesses in sex offense cases does an accused need a fairly wide latitude in developing the subtle influences and pressures which may be at work upon the child to produce a fabricated or a distorted account." *Id.* This court stated that the reason for the "wide latitude" is "that in sex offense cases 'where the nominal prosecutrix is a mere child, the person having custody or control of such child is the real prosecutor or prosecutrix, and [that] charges of this character are sometimes preferred for ulterior purposes.'" *Id.* (quoting *State v. Horton,* 247 Mo. 657, 153 S.W. 1051, 1053 (1913) (Supreme Court

held that the trial court erred in excluding evidence of threats made by the rape victim's mother against the defendant)). Thus, this court recognized that "the facts and circumstances showing bias may be shown specifically, and may be shown either by cross-examination of the witness sought to be impeached or by extrinsic evidence." *Id.*

The facts and defense in this case are similar to the facts and defense in *Hedrick.* Here, like in *Hedrick,* a young child is accusing her father of sexual abuse and her mother has a history of making false accusations of sexual abuse. The testimony of Greg and Carly Guerrero relates to Ms. Guerrero's history of making false accusations and trying to impose such accusations on her children. As the court in *Hedrick* found similar evidence admissible to show a witness's bias, the testimony of these witnesses is admissible to show Ms. Guerrero's bias.

Where the decision of the jury rested solely upon the credibility of the witnesses, the absence of Greg and Carly Guerrero's testimony prejudices Mr. Kuehne because the jury made its decision without evidence of the possible "influences and pressures which may be at work upon the [child-accuser] to produce a fabricated or distorted account." *Id.* There is a reasonable probability that the results of the trial would have been different if Mr. Kuehne's lawyer had called Greg and Carly Guerrero to testify about Ms. Guerrero's bias and the jury had heard their testimony of her preoccupation with discovering sexual abuse of her child and her insistence that abuse had occurred. Therefore, Mr. Kuehne has alleged sufficient facts entitling him to an evidentiary hearing on the issue of whether trial counsel was ineffective for failing to call Greg and Carly

Guerrero.[2]

With regard to Elizabeth Nigro Hill, Mr. Kuehne alleged that she would have testified that she was K.K.'s guardian ad litem during the paternity suit and Ms. Guerrero repeatedly accused Mr. Kuehne of sexually abusing K.K. during the paternity suit. She also would have testified that she arranged for Mr. Kuehne, Ms. Guerrero, and K.K. to meet with a therapist so that he could watch Mr. Kuehne and K.K. interact, but that Ms. Guerrero and K.K., who was in Ms. Guerrero's custody, did not show up for the appointment. Like Greg and Carly Guerrero's testimony, Ms. Nigro Hill's testimony also would be admissible because it throws light on Ms. Guerrero's credibility and relates to her bias towards Mr. Kuehne in that it shows that she repeatedly accused him of sexually abusing K.K. but would not cooperate in having a therapist evaluate whether the accusations were true. Since her alleged testimony would be admissible to show Ms. Guerrero's bias, it would provide Mr. Kuehne with a viable defense.

With regard to Marco Roldan, Mr. Kuehne claimed that Marco Roldan would have testified that he represented Mr. Kuehne during a previous criminal matter instigated by Ms. Guerrero, and that, during this representation, he learned about a videotape Ms. Guerrero gave to the police as evidence that Mr. Kuehne sexually abused K.K. Marco Roldan would have testified as to the contents of the videotape and that the police, after viewing the tape, determined that Ms. Guerrero's claims were unfounded and ceased their investigation of Mr. Kuehne. Marco Rol-

dan's testimony about the contents of the videotape or any statements by the police would not be admissible. His testimony concerning the contents of the videotape is inadmissible because the videotape itself is the best evidence of its contents and there is no allegation that the videotape was unavailable or inaccessible. " 'The [best evidence] rule stated is this: in proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent.' " *Student Loan Mktg. Ass'n v. Holloway*, 25 S.W.3d 699, 705 (Mo.App.2000) (quoting *Chevalier v. Dir. of Revenue*, 928 S.W.2d 388, 391–92 (Mo.App.1996)). The best evidence rule applies to videotapes in addition to writings and other recordings. *State v. Teague*, 64 S.W.3d 917, 922 (Mo.App.2002). The best evidence rule is applicable when a witness's knowledge is based solely from viewing the videotape. *Id.* This would preclude Marco Roldan's testimony about the content of the videotape.

In addition, his testimony concerning the police officers' statements is inadmissible hearsay, because he would be testifying about statements made by the police to prove that the videotape did not show evidence of sexual abuse. "Testimony of a witness regarding the statement of another is hearsay and inadmissible ... when the statement is offered as proof of the matters therein stated." *Still v. Travelers Indem. Co.*, 374 S.W.2d 95, 102 (Mo. 1963). Nevertheless, his testimony regarding the event of the police dropping their investigation of Mr. Kuehne after

**2.** On direct appeal, this court found that evidence of Ms. Guerrero's own sexual abuse was not relevant to any issue in the case. *Kuehne*, 37 S.W.3d at 299. Our ruling here is not contradictory to the ruling on the direct appeal because we are not holding that the

fact that Ms. Guerrero was abused is in and of itself relevant. Instead, we are holding that this information is relevant in the context of Carly's testimony because it sheds light on Ms. Guerrero's potential bias as a witness.

viewing the videotape is admissible because it is within Marco Roldan's personal knowledge. "If a fact exists independent of the writing [or recording or videotape], then the best evidence rule does not apply to prohibit testimony as to the fact." *Chevalier*, 928 S.W.2d at 393. Because this testimony sheds light on the credibility of Ms. Guerrero's testimony, it would provide Mr. Kuehne with a viable defense.

In contrast, Mr. Kuehne's allegations with respect to Sherrill Rosen are insufficient to warrant an evidentiary hearing. Mr. Kuehne alleged in his amended motion that Sherrill Rosen represented him during the paternity suit and referred him to Marco Roldan because of Ms. Guerrero's repeated complaints to the Division of Family Services. Sherrill Rosen's proposed testimony, however, would not provide Mr. Kuehne with a viable defense because it does not show that Ms. Guerrero fabricated the sexual abuse charges and imposed them on K.K. Thus, Mr. Kuehne did not plead sufficient facts to warrant an evidentiary hearing on whether trial counsel was ineffective for failing to call Sherrill Rosen.

With respect to the character witnesses, Terry and Jessica Horn and Margaret and Sophie White, Mr. Kuehne did not plead sufficient facts to warrant an evidentiary hearing on his claim that trial counsel was ineffective for failing to call them. Mr. Kuehne claimed in his amended motion that these witnesses would have provided evidence of his good character. Specifically, he claimed that, if they had been called to testify, Terry Horn and her twelve-year-old daughter, Jessica, would have testified that during the two years Mr. Kuehne and Terry dated, Mr. Kuehne never behaved inappropriately with Jessica and had a good relationship with her. Mr. Kuehne also claimed that, if they had been called to testify, Margaret White and her twelve-year-old-daughter, Sophie, would have testified that during the time Mr. Kuehne and Margaret dated, Mr. Kuehne never behaved inappropriately with Sophie and also had a good relationship with her.

A defendant is generally allowed to put on evidence of his good character concerning those "character traits inherent in the crime charged[.]" *State v. Goodwin*, 65 S.W.3d 17, 23 (Mo.App.2001). "[E]vidence concerning the defendant's character may only be shown by testimony as to his reputation-not by specific acts or conduct[.]" *State v. Brown*, 718 S.W.2d 493, 494 (Mo. banc 1986). Because Terri and Jessica Horn and Margaret and Sophie White would be testifying about only specific acts of good conduct by Mr. Kuehne, their testimony would be inadmissible and trial counsel was not ineffective for failing to investigate and call them. *See Barnum*, 52 S.W.3d at 608. Thus, Mr. Kuehne did not plead sufficient facts to warrant an evidentiary hearing on whether trial counsel was ineffective for failing to call these character witnesses.

### No Evidentiary Hearing Warranted on Failure to Control State's Witness

In his second point, Mr. Kuehne claims that the motion court clearly erred in denying, without an evidentiary hearing, his claim that trial counsel was ineffective for failing to control the State's witness, Ms. Guerrero, on cross-examination. Mr. Kuehne alleges that trial counsel was ineffective because she failed to control Ms. Guerrero with leading questions and allowed Ms. Guerrero to ramble when responding to questions.

Mr. Kuehne has not cited any authority to support his claim that trial counsel is ineffective for failing to control a State's witness on cross-examination. " 'It

is an appellant's obligation to cite appropriate and available precedent if [the appellant] expects to prevail.'" *Sapp v. State*, 22 S.W.3d 746, 747 (Mo.App.2000) (quoting *In re Marriage of Spears*, 995 S.W.2d 500, 503 (Mo.App.1999)). " 'Where, as here, the appellant neither cites relevant authority nor explains why such authority is not available, the appellate court is justified in considering the points abandoned and dismiss the appeal.'" *Id.* (quoting *Spears*, 995 S.W.2d at 503).

 Furthermore, Mr. Kuehne has not shown that trial counsel's failure to control Ms. Guerrero prejudiced him. He claims that his trial counsel's failure to control Ms. Guerrero resulted in her making unsolicited and unduly prejudicial remarks, which in turn allowed the jury to consider improper and irrelevant evidence when rendering its verdict. These statements include Ms. Guerrero's remark, upon being asked if K.K.'s Safe Exam had shown no evidence of abuse, "I was told by the doctor at Children's Mercy Hospital that it did not necessarily mean there was not abuse going on, that pedophiles were very careful to make sure they did not damage small children because it was very difficult to explain how it happened." In addition, Ms. Guerrero volunteered, "When [K.K.] was three months old [Mr. Kuehne] took her to the bar, and I found her there at the house with her food laying right next to the drug residue." After the second of Ms. Guerrero's statements, however, Mr. Kuehne's trial counsel objected to the volunteered statement of Ms. Guerrero and moved for a mistrial. When her motion was denied, she asked for and received a curative instruction. Because the trial court instructed the jury to disregard Ms. Guerrero's statement, the statement did not prejudice Mr. Kuehne. "It is normally presumed that the jury follows the instructions given it by the trial judge." *Hahn*, 37 S.W.3d at 354. Mr. Kuehne's allegations are insufficient to warrant an evidentiary hearing on whether trial counsel was ineffective for failing to control Ms. Guerrero on cross-examination.

### No Evidentiary Hearing Warranted on Failure to Object to Identical Verdict Directors

 In his third point, Mr. Kuehne alleges that the motion court clearly erred in denying, without an evidentiary hearing, his claim that trial counsel was ineffective for failing to object to the trial court giving identical verdict directors for the statutory rape counts (counts 1 and 4) and two of the statutory sodomy counts (counts 2 and 5). Mr. Kuehne claims his trial counsel's failure to object prejudiced him because "[m]ore specific instructions would have given the jury the guidance that it needed to reach an informed verdict." Moreover, "[b]ecause the jury was not given that guidance, there is no way to know what facts the jury considered in deciding the case, and the verdicts on counts 1, 2, 4, and 5 are not reliable."

In support of his position that the giving of identical verdict directors prejudiced him, Mr. Kuehne cites *State v. Mitchell*, 704 S.W.2d 280 (Mo.App.1986). In *Mitchell*, Mr. Mitchell was charged with two counts of exhibiting a lethal weapon in an angry or threatening manner. *Id.* at 282–83. The charges arose out of two separate incidents that occurred on the same day in different locations. *Id.* at 281–82. The wordings of both of the counts were identical, *id.* at 282–83, as were the verdict directing instructions given to the jury at trial. *Id.* at 284. Mr. Mitchell argued on direct appeal that because the jury instructions were identical, the jury could not determine which evidence to consider

when trying to decide whether he was guilty of each charge. *Id.* The Southern District agreed with Mr. Mitchell, and held that because he "was charged with, and tried for, two violations of the same statute occurring on the same date in the same county[,]" "a phrase identifying the alleged incident to which each verdict directing instruction refers should be added in using the proper pattern instruction." *Id.* at 286–87. Because the jury had to decide whether Mr. Mitchell's "actions during either, or both, of the incidents mentioned in the evidence constituted" the offense, the court held that the failure to identify which occurrence the verdict director related to "constituted prejudicial error." *Id.*

Courts have distinguished *Mitchell*, however, and held that the giving of identical verdict directors for multiple sex offenses of a child victim, which continued over a period of time, does not prejudice the defendant or cause manifest injustice. *See State v. Johnson*, 62 S.W.3d 61 (Mo. App.2001); *State v. Rudd*, 759 S.W.2d 625 (Mo.App.1988); *State v. Burch*, 740 S.W.2d 293 (Mo.App.1987). In each case, the defendant argued on appeal that the trial court erred or plainly erred in giving identical verdict directors. *Johnson*, 62 S.W.3d at 65; *Rudd*, 759 S.W.2d at 629; *Burch*, 740 S.W.2d at 295. The defendants argued that the identical verdict directors prejudiced them because the jury did not know which evidence to consider on each count or that each count covered a different act. *Johnson*, 62 S.W.3d at 65–66; *Rudd*, 759 S.W.2d at 629; *Burch*, 740 S.W.2d at 295. In each case, the appellate court held it was not error or plain error to give identical verdict directors. *Johnson*, 62 S.W.3d at 69; *Rudd*, 759 S.W.2d at

630; *Burch*, 740 S.W.2d at 296. First, in all of the cases, the evidence indicated a continuing series of acts, and not isolated and distinct acts like in *Mitchell*. *Johnson*, 62 S.W.3d at 63; *Rudd*, 759 S.W.2d at 627; *Burch*, 740 S.W.2d at 296. Second, in each case the defendant's defense was that he did not commit any of the acts, and, thus, was not dependent upon the differentiation between the counts as in *Mitchell*. *Johnson*, 62 S.W.3d at 68; *Rudd*, 759 S.W.2d at 628; *Burch*, 740 S.W.2d at 296. Third, in each case, the trial court instructed the jury to consider each count separately. *Johnson*, 62 S.W.3d at 69; *Rudd*, 759 S.W.2d at 630; *Burch*, 740 S.W.2d at 295. Thus, the court found that the jury understood that the defendant was charged with a different offense in each count and that it was required to consider each count separately. *Johnson*, 62 S.W.3d at 69; *Rudd*, 759 S.W.2d at 630; *Burch*, 740 S.W.2d at 296.

Mr. Kuehne's case is more similar to *Johnson*, *Rudd*, and *Burch* than to *Mitchell*. First, Mr. Kuehne was charged with committing sex offenses that occurred over a long period of time, from March 22, 1995, to June 30, 1996. Second, Mr. Kuehne's defense was that he never committed any of the offenses. Third, the trial court instructed the jury that each count represented a separate offense and each count "must be considered separately."

Because Mr. Kuehne's case is more similar to those where this court found that the giving of the identical verdict directors did not prejudice the defendant, trial counsel was not ineffective for failing to object to the identical verdict directors in this case.[3] Trial counsel will not be deemed ineffec-

---

**3.** We are not called upon at this time to determine whether the current state of the law regarding identical verdict directors is correct. We are only required to determine whether Mr. Kuehne is entitled to an eviden-

tiary hearing on his claim that his trial counsel was ineffective in following the current state of the law regarding identical verdict directors.

tive for following the state of the law as it existed at the time of trial. *State v. Parker*, 886 S.W.2d 908, 923 (Mo. banc 1994). Thus, Mr. Kuehne has not pled facts warranting an evidentiary hearing on his claim that trial counsel was ineffective for failing to object to the identical verdict directors.

### No Evidentiary Hearing Warranted on Failure to Locate Impeachment Evidence

■ In his fourth point, Mr. Kuehne alleges that the motion court clearly erred in denying, without an evidentiary hearing, his claim that trial counsel was ineffective for failing to investigate and locate a videotape that Ms. Guerrero gave to the Kansas City Police Department. Mr. Kuehne asserts the videotape showed Mr. Kuehne holding K.K. when she was an infant. He also claims that Ms. Guerrero gave the tape to the Kansas City Police Department in 1991 as proof that Mr. Kuehne molested K.K., and upon viewing it, the police dropped its investigation. Mr. Kuehne argues that trial counsel's failure to locate and investigate the videotape prejudiced him because it would have impeached Ms. Guerrero and helped his defense that Ms. Guerrero fabricated the sexual abuse charges.

■ "In order to render effective counsel, a defense attorney has an obligation to investigate the evidence *available* on behalf of [her] client and then to take the steps necessary to produce that evidence at trial." *Honeycutt v. State*, 54 S.W.3d 633, 647 (Mo.App.2001) (emphasis added). While Mr. Kuehne alleges that Ms. Guerrero gave the videotape to the Kansas City Police Department in 1991 and the videotape "should have been" in the police department's possession, Mr. Kuehne does not allege that the videotape is still available. He does not allege that the videotape still exists or that his trial counsel could have obtained it through a reasonable investigation. Thus, his allegations of ineffective assistance of counsel for failing to investigate and locate the videotape are insufficient to warrant an evidentiary hearing on this claim. *Id.*

### No Evidentiary Hearing Warranted on Failure to Call Expert Witnesses

■ In his fifth point, Mr. Kuehne alleges that the motion court clearly erred in denying, without an evidentiary hearing, his claim that trial counsel was ineffective for failing to call expert witnesses on the topics of the suggestibility of children in interviews and Parental Alienation Syndrome.

■ To obtain an evidentiary hearing on the claim of ineffective assistance of counsel for failing to call expert witnesses, a movant must have alleged in his Rule 29.15 motion: (1) that such an expert "existed at the time of trial"; (2) that the expert "could have been located through reasonable investigation"; and (3) that the expert's testimony "would have benefited movant's defense." *State v. Davis*, 814 S.W.2d 593, 603–04 (Mo. banc 1991).

Mr. Kuehne's allegations with respect to these expert witnesses are not sufficient to warrant him an evidentiary hearing. Although Mr. Kuehne claims that, at an evidentiary hearing, Dr. Judith K. Adams would testify about the suggestibility of children in interviews and Dr. Richard M. Gardner would testify about Parental Alienation Syndrome, he does not plead that either of these expert witnesses existed at the time of trial or could have been located through reasonable investigation. Thus, he has not made the required allegations and, therefore, is not entitled to an evidentiary hearing on this claim.

## Conclusion

The judgment of the motion court is affirmed in part and reversed in part. The cause is remanded for an evidentiary hearing on Mr. Kuehne's claim that trial counsel was ineffective for failing to call Greg Guerrero, Carly Guerrero, Elizabeth Nigro Hill, and Marco Roldan.

All concur.